FOREST CITY MANUFACTURING COMPANY, A CORPORATION (PLAINTIFF), RESPONDENT, ELY & WALKER DRY GOODS COMPANY, RICE-STIX DRY GOODS COMPANY, SOLOMON MANUFACTURING COMPANY, R. LOWENBAUM MANUFACTURING COMPANY, AND LANG-KOHN MANUFACTURING COMPANY, PLAINTIFFS, v. INTERNATIONAL LADIES' GARMENT WORKERS' UNION, LOCAL NO. 104 (DEFENDANT), APPELLANT, BEN GILBERT, DAVID DUBINSKY, EDITH PHILLIPS, MORRIS BILIS, ANN COOPER, GENE QUILLO, IRENE DECSEL, ANN WEBER, THERESE BURKE, PEARL BLACKBURN, PEARL PELFANO, VELMA MAULL, BERTHA WALKER, IDA REED, LORRAINE POE, FLOSSIE ZAPP, JOSEPHINE PASSAMANTE, JOSEPHINE RANDAZZO, ELIZABETH KRIEG, ANNA FELDMAN, WILMA CUSTER, IRENE POLK, HARRY SOLOMON, ALICE WEBB, PEARL DENNIS, CASSIE HILL, BEULA PACE, GEORGE VORTRUBA, AND VIRGINIA FRANCIS, DEFENDANTS.—111 S. W. (2d) 934.

St. Louis Court of Appeals. Opinion filed January 4, 1938.

936

*Francis M. Curlee* and *Richard F. Moll* for respondent..

*Edward W. Tobin* for appellant, International Ladies' Garment Workers' Union, Local No. 104.

938

BENNICK, C.—This case, which is a suit for an injunction, grows out of the controversy attending a general strike which was called on August 10, 1933, by the International Ladies' Garment Workers' Union in behalf of its St. Louis locals against the several plaintiffs originally joining in the institution of this suit, all of whom were engaged in the manufacture of cotton dresses. Subsequently an order of dismissal was entered as to all the plaintiffs save Forest City Manufacturing Company, and it alone pursued the case to its final determination.

The defendants were the International Ladies' Garment Workers' Union, Local No. 104, and some twenty-nine individuals who, as officers and members of the union, were alleged to be responsible for the commission of unlawful acts of violence and intimidation directed against plaintiffs and those of their employees who had not gone out on the strike.

It would appear that the controversy leading up to the strike had had to do with the questions of closed shop and union representation in the operation of plaintiff's several businesses. No issue was raised as to the precise question of the employees' right to strike, but instead the injunction was sought for the purpose of having defendants restrained from the commission of acts which were alleged to be unlawful in connection with the strike.

Shortly following the institution of the suit a temporary injunction was ordered to issue by the court. Default was granted and inquiry ordered as to all the individual defendants, none of whom had appeared, and thereafter issue was joined between plaintiff Forest City Manufacturing Company and defendant International Ladies' Garment Workers' Union, Local No. 104. At the final hearing in the case the court ordered that the temporary injunction theretofore granted be made permanent, and from such judgment and decree of the court an appeal to this court has been duly perfected by defendant International Ladies' Garment Workers' Union, Local No. 104.

At the very outset of the case there is presented the question of the suability of appellant, which is concededly but a voluntary unincorporated association or labor union. The question was raised by demurrer to the petition wherein appellant's *status* as a voluntary unincorporated association was affirmatively alleged; it next appeared in the answer as a matter of defense; it was kept alive by motion to dissolve the temporary injunction; and finally, when the court, by its decree, had made the injunction permanent, the question was preserved for the court's attention in the motion for a new trial. In this court the question is brought to our notice in appellant's very first assignment of error, and it is therefore to be determined as a matter of prime importance in the case, since if it is true that appellant, by reason of its character as a voluntary unincorporated association, was not subject to be sued, then it must follow that respondent could not have been legally entitled to any injunctive relief against it.

Now the general rule is well settled that a voluntary unincorporated association, in the absence of statutory authority, does not have the legal capacity to sue or be sued in its common or associate name. This of course for the reason that such an association is "purely a creature of convention, organized and existing under the common-law right of contract only," and having no legal entity distinct from that of its members. [Newton County Farmers' & Fruit Growers' Exchange v. Kansas City So. Ry. Co., 326 Mo. 617, 31 S. W. (2d) 803; Ruggles v. International Association of Bridge, Structural and Ornamental Iron Workers, 331 Mo. 20, 52 S. W. (2d) 860; Corbett v. Milk Wagon Drivers Union, Local No. 603 (Mo. App.), 84 S. W. (2d) 377; 7 C. J. S., Associations, sec. 36; 4 Am. Jur., Associations and Clubs, sec. 46.]

In this State there has been but one attempt, so far as we are aware, to constitute voluntary unincorporated associations suable entities by express statutory enactment. In 1915 the Legislature (Laws 1915, p. 225) enacted what now appears as the seventh subdivision of section 728, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 728, p. 947), in which, along with directing how service upon such associations should be had, it was provided that "where any action shall be commenced against any voluntary or unincorporated association or organization it may be sued in the name it has selected or by which it is known or uses." However our Supreme Court in 1928 held such act unconstitutional insofar as it undertook to make voluntary or unincorporated associations or organizations suable entities, though the court held that the act did not offend against the Constitution to the extent that it prescribed the manner of serving process upon such associations or organizations, if any there might be, as were otherwise properly constituted suable entities. [Mayes v. United Garment Workers of America, 320 Mo. 10, 6 S. W. (2d) 333.]

We might mention, incidentally, that the court's decision in holding so much of the act of 1915 unconstitutional as attempted to constitute voluntary unincorporated associations suable entities was based upon the fact that no such purpose had been expressed in the title to the act, which was one amending what then appeared as section 1760, Revised Statutes Missouri, 1909. In other words, the court's holding was that under the title to the act, which purported to show no more than that the act was one amending section 1760, Revised Statutes Missouri, 1909, "by inserting certain words," it was necessary that the amendatory matter be germane to the section specified, and that inasmuch as the original section had been confined exclusively to the subject of the execution of summons and had not purported to create, constitute, or define suable entities, the amendment was invalid as a departure from the subject previously dealt with insofar as it attempted to constitute voluntary or unincorporated associations or organizations suable entities within this State.

So in consequence of the decision of the Supreme Court in Mayes v. United Garment Workers of America, *supra,* section 728 of the current revision of the statutes is to be disregarded insofar as it purports to be authority for the maintenance of a suit or action against a voluntary unincorporated association, which means that if such authority now exists, it must be looked for elsewhere in the statutes. Respondent is of course aware that section 728 affords it no basis for its assumption that appellant is a suable entity, but it contends, in line with the usual insistence in cases where a voluntary unincoporated association is a party, that such authority is to be derived from article 12, section 11, of the Constitution of Missouri, and from sections 4526 and 4555, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., secs. 4526 and 4555, pp. 1983 and 1999).

Both article 12, section 11, of the Constitution and section 4526 of the statutes provide that the term "corporation," as used in the respective article and chapter, "shall be construed to include all joint stock companies or associations having any powers or privileges not possessed by individuals or partnerships," while section 4555 provides that every corporation, as such, shall have the power, among other things, "to sue and be sued, complain and defend in any court of law or equity."

Founding its right to sue appellant upon such constitutional and statutory provisions, but recognizing the fact that as a matter of good pleading appellant's *status* as a suable entity, if such it should possess, was to be averred, not by the statement of the mere legal conclusion that it had powers or privileges not possessed by individuals or partnerships, but only by an allegation of the source of such powers or privileges (Newton County Farmers' & Fruit Growers' Exchange v. Kansas City So. Ry. Co., *supra*; Clark v. Grand Lodge of Brother-

hood of Railroad Trainmen, 328 Mo. 1084, 43 S. W. (2d) 404; Ruggles v. International Association of Bridge, Structural and Ornamental Iron Workers, *supra*), respondent elected to plead in its petition in the following language:

"Plaintiffs further state that defendant International Ladies' Garment Workers' Union, Local No. 104, is a voluntary unincorporated labor union or association having powers or privileges not possessed by individuals or partnerships and within the terms of Section 11, Article XII, of the Constitution of Missouri and Chapter 32 of the Revised Statutes of Missouri, 1929, in this, to-wit:

"1. Said defendant International Ladies' Garment Workers' Union, Local No. 104, is an entity separate and distinct from its individual members and has continued unlimited and uninterrupted existence, notwithstanding the death or withdrawal of any of its said individual members.

"2. Section 10116 of the Revised Statutes of Missouri, 1929, exempts labor organizations or associations such as defendant International Ladies' Garment Workers' Union, Local No. 104, from the provisions and requirements of and taxation under the Missouri State Income Tax Laws.

"3. Title 26, Section 982, U. S. Code Annotated, exempts labor organizations or associations such as defendant International Ladies' Garment Workers' Union, Local No. 104, from the provisions and requirements of and taxation under the Federal Income Tax Laws.

"4. Title 15, Section 17, U. S. Code Annotated, exempts labor organizations or associations such as defendant International Ladies' Garment Workers' Union, Local No. 104, from the provisions and restrictions of the Anti-Trust Laws of the United States.

"5. Section 14329, Revised Statutes Missouri, 1929, gives working men's unions or associations such as defendant International Ladies' Garment Workers' Union, Local No. 104, if they desire to designate or make known the place in which union labor is employed, the exclusive power or privilege to select a name, term, design, or device for such purpose, and register the same with the Secretary of State.

"6. Section 14337, Revised Statutes Missouri, 1929, gives to workmen's unions or associations such as defendant International Ladies' Garment Workers' Union, Local No. 104, the exclusive right and privilege to determine where their union cards or labels shall be kept or displayed, and prescribes a penalty for the wrongful use of same.

"7.. Sections 13195, Revised Statutes Missouri 1929, gives to trade or labor unions or associations such as defendant International Ladies' Garment Workers' Union, Local No. 104, the right and privilege to be represented by a member of a labor union on the State Board of Mediation created by said section.

"Wherefore, plaintiffs state that defendant International Ladies' Garment Workers' Union, Local No. 104, is a suable entity, and may, by express provision of the statutes of Missouri, sue and be sued, complain and defend in any court of law or equity."

Thus it is to be observed that in attempting to enumerate with particularity the identity of the alleged powers or privileges possessed by appellant which are not possessed by individuals or partnerships and on account of which respondent contends that appellant should be regarded as amenable to suit despite its admitted character as a voluntary unincorporated association, respondent has specified some six different statutory powers or privileges, four of which are alleged to have been accorded appellant by statutes of Missouri, and two by federal statutes.

While for reasons which we shall presently discuss we think that none of such specified powers or privileges are of the character contemplated by the Constitution and statute as serving to constitute a voluntary unincorporated association a suable entity, we have no doubt at all that the powers or privileges alleged to have been conferred upon associations and organizations such as appellant by the two federal statutes in question should in any event be disregarded as not sufficing to affect appellant's legal *status* under the Constitution and laws of this State. This in brief for the reason that the creation of a corporation or suable entity is an exercise of sovereign legislative power peculiar to the sovereignty which purports to exercise it, and having no extraterritorial effect except by the permission of those other sovereignties within whose limits the corporation so created may desire to carry on its operations.

So in this instance, if appellant is to be regarded as a suable entity within this State, it can only be so by virtue of article 12, section 11, of the Constitution and section 4526 of the statutes, which serve as the authority for investing a voluntary unincorporated association with the equivalent *status* of a corporation in those cases, if any, where the particular association has been endowed by some other statute or statutes with powers or privileges not possessed by individuals or partnerships. But the important thing is that the powers or privileges must be conferred by local statutes if the association is to be regarded as a suable entity in this State, since otherwise there would be the anomalous situation presented of a corporation or suable entity created in Missouri within the meaning of our Constitution and laws, not, however, by virtue of a grant of such power or *status* by this State itself, but by a grant of power from the federal government as a sovereignty separate and distinct from the local government.

Of course we appreciate that Congress does have the implied power to create a corporation whenever such an act is an appropriate means of carrying into execution any of the powers specifically

conferred by the Constitution of the United States upon the federal government or any branch or department thereof, and that if the requisite power is to be implied in a given instance, then such a corporation may even be created by Congress within a State. [14 C. J. 97.] However no such effect could possibly be ascribed to the act of Congress in exempting labor organizations or associations such as appellant from the provisions of the federal income tax and *anti*-trust laws, and in fact it is not even claimed by respondent that appellant is a corporation or suable entity existing by virtue of any act of Congress. So we repeat that if appellant is a suable entity. within this State, it is only so by reason of some local legislative provision to that effect, and federal statutes, whatever may be their import, are therefore of unimportance upon the point now in issue.

But as we pointed out above, the fact is that not even the four local statutes pleaded by respondent have the effect of constituting a voluntary unincorporated association a suable entity, nor were they obviously ever intended by the Legislature to achieve that purpose. It is inconceivable to think that one desiring to learn if a particular association has been constituted a suable entity should be put to the task of leafing meticulously through the pages of the statutes and subsequent session acts to see perchance if that association had somewhere and some time been accorded a privilege of any character not accorded to individuals or partnerships, and it is equally inconceivable to think that the Legislature, if it had ever desired to constitute a voluntary unincorporated association a suable entity, would have done so by the strained and indirect method contended for by respondent, that is, by exempting it from the income tax laws,. or by giving it the right to select a union label and determine where the same should be displayed, or by giving it the right to be represented by a member on the State Board of Mediation. No one knows better than the Legislature how to go about constituting such an association a suable entity if it should ever desire to do so, and the only fair implication to be drawn from the absence of any direct legislation on the subject at the present time is that following the action of the Supreme Court in declaring the Act of 1915 unconstitutional, the Legislature has not since seen fit to adopt a policy in such matter contrary to that which obtains at common law. And indeed that this is so is all the more clearly evidenced by the fact that both the Supreme Court and the Courts of Appeals have repeatedly called attention to the fact that in the absence of statutory authorization a voluntary unincorporated association can neither sue nor be sued in its common or associate name.

This brings us then to the point of determining what is meant in article 12, section 11, of the Constitution and in section 4526 of the statutes, wherein it is provided that the term "corporation," as used in the article and chapter on corporations, "shall be construed

to include all joint stock companies or associations having any powers or privileges not possessed by individuals or partnerships.'' We think that what is undoubtedly meant is simply this—that joint stock companies and associations are to be treated as corporations within the purview of article 12 of the Constitution and chapter 32 of the statutes whenever it is made to appear that such joint stock companies or associations have been invested with any powers or privileges which are distinct attributes of corporations as distinguished from individuals or partnerships. In other words, a joint stock company in any event remains a joint stock company, and an association in any event remains an association, but if either is invested by law with any of the distinct attributes of a corporation, then such organization is to be treated as a corporation for the purposes of the respective article and chapter, which would mean, of course, that under such circumstances it would have the power ''to sue and be sued, complain and defend in any court of law or equity.'' [State ex rel. v. Lee, 288 Mo. 679, 701, 233 S. W. 20, 26.]

Inherently, that is, unless otherwise provided by statute, an association is quite unlike a corporation in its essential particulars. A corporation is an artificial being, existing only in contemplation of law, and possessing only those powers which the charter of its creation has imposed upon it either expressly or as incidental to its very existence, while as association is but a mere collection of natural persons who have united or joined themselves together for some special purpose or business. A corporation is a creature of the sovereign power which brings it into being, with an entity separate and distinct from the individuals who compose it, and endowed with the right of continuous succession during the period of its existence, while an association exists purely under the common-law right of contract on the part of its members, has no legal entity distinct from that of its members, and does not enjoy the power of perpetual or continuous succession. A corporation acts in its own person and as a unit in the exercise of whatever powers have been conferred upon it by the sovereignty which has created it, while the individuals who compose an association act only by virtue of a mere agency, with their privileges and duties defined by the contract they have made. The business carried on, and indeed the form of organization itself, may be and frequently is but little different on its surface as between a corporation and an association, but there is nevertheless the vital distinguishing characteristic always to be observed between the two, which is, as we have already pointed out, that the corporation is a distinct legal entity in its own right, while an association possesses no such entity, but is only the aggregate of the individuals composing it, though called, for convenience, by a common or associate name. [7 C. J. S., Associations, sec. 1; 14 C. J. 67; 4 Am. Jur., Associations and Clubs, sec. 2.]

So we repeat that it is undoubtedly the matter of the distinguishing characteristics and special attributes of a corporation which the Constitution and statute contemplate when they say that the term "corporation," as used in the article and chapter, "shall be construed to include all joint stock companies or associations having any powers or privileges not possessed by individuals or partnerships." In other words, the powers or privileges referred to in the Constitution and statute are not such powers or privileges as are possessed by individuals or partnerships for the reason that they are foreign to the attributes of natural persons, being instead of a character peculiar to the nature and attributes of a corporation in view of its *status* as an artificial person, invisible, intangible, and existing only in contemplation and by permission of law.

While it seems that in none of the prior reported cases involving the subject of the suability of a voluntary unincorporated association has the question of the meaning of the particular constitutional and statutory provision been presented quite so pointedly as in this case, yet as a matter of fact it would appear that the courts in the decision of all those cases have taken it for granted that the provision meant exactly what we are holding it to mean in this case. For instance, it is to be observed that in many of those decisions the court took occasion to make specific note of the fact that whether a particular association could be held to have the capacity to sue or be sued would depend upon the showing of such matters as the association's characteristics and organization as the same would go to determine the question of whether the association might be said to possess a legal entity of its own.

Indeed it would appear that respondent itself is not without the same conviction in the matter, since in the very first specific reference in its petition to the powers or privileges alleged to be possessed by appellant which are not possessed by individuals or partnerships, it pleaded that appellant is an entity separate and distinct from its individual members, and that it has continued, unlimited, and uninterrupted existence. If this were the fact as stated in the petition, then appellant would indeed be a suable entity, but the trouble is that not only did respondent's averment constitute but a mere legal conclusion, without any regard for the necessity of pleading the statutory source of such power if it existed (Ruggles v. International Association of Bridge, Structural and Ornamental Iron Workers, *supra*), but in addition the allegation was wholly unsupported by any proof that appellant actually possessed any such characteristics. Moreover it is significant that in the further course of its petition, after stating the names of the individual defendants to the suit, and after alleging that such individual defendants were all members and representatives of appellant, respondent set up that they "sufficiently represent and control the same (appellant)

to bring said local union and all of the members thereof before this Court for the adjudication of this cause.'' This was a clear recognition on respondent's part of the doctrine of virtual representation which is necessarily peculiar to suits against unincorporated associations, and as such was wholly inconsistent with any idea that appellant is a legal entity, existing separate and apart from its members, so as to invest it with the capacity to be sued in its common or associate name.

So it follows that if voluntary unincorporated associations are to constituted suable entities in this State, the Legislature must so provide, either by direct legislation affecting all such associations, or else by conferring that *status* upon particular classes of associations whenever it deems that the public interest so requires. In other words, the question is purely one of legislative policy, with the merits of which the courts, within their special province, are not concerned. As the law now stands, our Supreme Court has spoken definitely and repeatedly upon the question of the nonsuability of such associations, and until such time as the present state of the law upon that subject may be changed it is our plain duty to follow the letter of those decisions. [Corbett v. Milk Wagon Drivers Union, Local No. 603, *supra.*] Indeed, any contrary result such as respondent argues for would not only convert associations of the particular character of appellant into suable entities, but it would necessarily have the effect of imposing the same liability upon unincorporated agricultural, benevolent, charitable, educational, religious, political, and professional associations, clubs, and societies, whenever it should be made to appear that any such organization had been accorded some power or privilege of a nature consonant with its special purposes or activities, but not enjoyed by individuals or partnerships in the usual course of human affairs.

Of course we recognize the fact that even in the absence of express statutory provision the *status* of a suable entity may in certain instances be accorded a voluntary unincorporated association by necessary implication from other legislation which recognizes such association as a legal entity, at least with respect to the exercise of the particular powers conferred upon it. Thus an unincorporated association, if authorized by statute to contract in its own name for certain purposes, will necessarily be looked upon as having the corresponding legal capacity to be sued on such contracts in its own name. [Clark v. Grand Lodge of Brotherhood of Railroad Trainmen, *supra*; 4 Am. Jur., Associations and Clubs, sec. 47.] And then too, if an association, despite its true character, elects to do business as a legal entity, it may well be estopped to deny that it possesses such *status* when subsequently it is held to account with respect to the business thus carried on. [Clark v. Grand Lodge of Brotherhood of Railroad Trainmen, *supra*; 7 C. J. S., Associations, secs. 5, 36.]

However there is no such case now before us. Here respondent seeks merely to obtain injunctive relief against appellant by reason of the latter's alleged participation with the individual defendants in the commission of certain acts of violence and intimidation directed against respondent and its employees, but upon the showing that appellant is no more than a voluntary unincorporated association, without the *status* of a legal entity, it follows that respondent cannot have its relief against appellant, regardless of what the merits of the case might otherwise be. [Streib v. International Brotherhood of Boilermakers and Iron Ship Builders and Helpers of America, 335 Mo. 1221, 76 S. W. (2d) 400.]

But respondent makes the final suggestion that there should actually be no question of appellant's suability to be determined in this case in view of appellant's failure to have filed a verified denial of its corporate *status*. What respondent has in mind is section 965, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 965, p. 1235), which provides that when the defendant is sued as a corporation, "it shall not be necessary to prove the fact of such incorporation . . . unless the opposite party puts such fact in issue by affidavit filed with the pleadings in the cause." The obvious answer to this suggestion is that appellant was not sued as a corporation, but as a voluntary unincorporated association, though alleged to have been invested with such powers and privileges as to have constituted it a suable entity; nor is there any pretense that appellant was ever incorporated, or that any attempt was ever made to incorporate it, so as to have made it possible that the fact of its incorporation could have been an issue in the case. It follows, therefore, that section 965 is wholly without application to the situation, and this being true, the question of whether appellant is a suable entity was not only a proper but a necessary one to be determined as issue was joined in the pleadings in the case.

For the reasons stated it follows that the judgment of the circuit court should be reversed as to defendant International Ladies' Garment Workers' Union, Local No. 104, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed as to defendant International Ladies' Garment Workers' Union, Local No. 104. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.