CONSOLIDATED ELECTRIC COOPERA-
TIVE v. PANHANDLE EASTERN
PIPELINE CO.

No. 14208.

United States Court of Appeals
Eighth Circuit.

June 8, 1951.

J. W. Buffington, Mexico, Mo. (Clem F. Storckman, St. Louis, Mo., on the brief), for appellant.

Kenneth Teasdale, St. Louis, Mo., and Albert Thomson, Kansas City, Mo. (Johnson, Davis, Thomson, VanDyke & Fairchild, Kansas City, Mo., and Cobbs, Blake, Armstrong, Teasdale & Roos, St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellee as plaintiff to recover from appellant damages to its pipeline, alleged to have been caused by the negligent explosion of a charge of dynamite by appellant's employees. It will be convenient to refer to the parties as they were designated in the trial court.

Defendant's answer admitted the corporate existence of plaintiff and defendant, admitted diversity of citizenship, admitted that plaintiff was and is engaged in transporting and selling natural gas and that it maintains high pressure gas pipelines in various counties in the State of Missouri and at a specified location described in the complaint. It in effect denied all other material allegations. As an affirmative defense it pleaded that it was organized September 6, 1946, long subsequent to the time of the acts of negligence charged to it in the complaint; that a former association or organization bearing the name Consolidated Electric Cooperative, attempted to be organized on June 20, 1938, but had in fact no corporate existence and was not a legal entity capable of suing or being sued; that said association was at the times mentioned in the complaint an agency of the United States government and the defendant since its organization has been and is an agency of the United States government, and neither of such agencies is liable for the tortious acts set forth in the complaint; that it is a non-profit membership corporation engaged in the distribution of electric energy under the rural electrification authority of the United States and under the statutes of the State of Missouri. It then pleaded a counterclaim, alleging that certain of its employees, while engaged in digging a post hole for the purpose of planting an anchor, placed a small charge of dynamite in the hole to blow out rock; that when the dynamite exploded a dangerous quantity of gas came from one of plaintiff's pipelines and caught fire, causing defendant's employees to be grievously burned, and the fire so ignited consumed various and sundry tools and equipment belonging to the defendant; that plaintiff knew there would be likelihood of placing poles along the right of way occupied by it and that the digging of post holes and blasting would likely take place along the right of way and knew that defendant's employees were engaged in putting in a line of poles along said right of way and in so doing would likely use dynamite for blasting where it was needed; that plaintiff negligently failed to maintain warning signs or markers indicating the presence and location of said pipelines.

Plaintiff's reply put in issue the material affirmative allegations of the answer, pleaded that the defendant was the successor to Consolidated Electric Cooperative, a corporation organized and existing under the laws of Missouri; that defendant is identical with and had acquired all the assets and business of its predecessor; that if defendant suffered any loss or damages to its property as alleged in its counterclaim, the loss or damage was caused by and was the direct result of the negligence of defendant.

Prior to the trial of the action on its merits defendant filed motion for summary judgment on the ground that it was not in existence as a legal entity on September 22, 1941, the date of the alleged injury to plaintiff's property, and that it had not assumed or incurred any such liability and was not liable on September 22, 1946, when sued for the alleged tort. The motion was based upon an affidavit of the president of the defendant and exhibits attached thereto. It is recited in the affidavit that on June 20, 1938, there was filed in the office of the Secretary of State of the State of Missouri certain documents purporting to be articles of association for a cooperative association, pursuant to the provisions of Article 29, Chapter 87 of the 1929 Revised Statutes of the State of Missouri, R.S. 1949, § 357.010 et seq., under the name of Consolidated Electric Cooperative, a copy of the articles of association being attached to the affidavit; that the articles of association set forth that the purpose of the organization was the generating and supplying of electric energy to its members and the wiring of their premises and the doing of other acts necessary to such purposes; that in the case of State on Inf. Huffman v. Sho-Me Power Cooperative, 354 Mo. 892, 191 S.W.2d 971, the Supreme Court of Missouri decided that the statutes authorized the creation of cooperatives to conduct an agricultural or mercantile business, including dealing with or by associations of agricultural, dairy and similar products, and did not authorize the creation of an electric and power cooperative, and held that such statutes did not authorize the creation of an electric power cooperative. The articles of incorporation recite in great detail the purpose for which it is formed and recite, among other things, that upon dissolution or liquidation the assets of the association shall be applied to the liquidation of expenses, the payment of obligations other than dividends "and the remainder of such assets shall be distributed in the following priority: (1) to pay any deferred dividends upon capital stock; (2) to pay any deferred dividends upon purchases by patrons; (3) any remaining assets shall be distributed among the stockholders at the date of the dissolution or liquidation in proportion to their deferred dividends on purchases from the Association." Under date June 20, 1938, certificate of incorporation issued under the hand and seal of the Secretary of State. This certificate, after numerous recitals, declares that the Consolidated Electric Cooperative became a body corporate, duly organized under the name of Consolidated Electric Cooperative, and "is entitled to all the rights and privileges granted to Cooperative Associations under the laws of this state for a term of perpetual years, and that the amount of the capital stock of said corporation is $10,000.00."

On this motion for summary judgment or during the trial, there was record proof that the predecessor company functioned as a corporation, had a board of directors, a president and a secretary, used a minute book, held board meetings and kept minutes of the meetings of stockholders. The meeting of September 4, 1946, approved the minutes of the annual meeting of February 5, 1946, and of a special meeting. At that meeting there was considered the proposition of "conversion." The meeting was informed that the board of directors had approved the proposition for conversion and proposed articles of conversion which by resolution were adopted by the stockholders. A resolution was adopted providing that the then board of directors would continue to serve until the "next annual meeting of the members" and articles of conversion were approved. The resolution to convert to a corporation was "to convert the present and existing corporation" to a corporation subject to the provisions of Article 7, Chapter 33, Revised Statutes of Missouri, 1939, R.S.1949, § 394.010 et seq. The articles of conversion stated that the name of the "present and now existing corporation" was Consolidated Electric Cooperative; that the address of the "present and existing corporation" was 217 West Jackson Street in the City of Mexico, Missouri, and that the address when converted would be 217 West Jackson Street in the City of Mexico, Missouri. The articles of conversion were acknowledged as a corporate act, executed by the president, and the

corporate seal of the corporation was affixed. Accompanying the articles of conversion was the statutory corporate affidavit and the president swore that he was president of Consolidated Electric Cooperative, a corporation. The Secretary of State issued a certificate of conversion in which he certified that Consolidated Electric Cooperative, "a corporation," had filed its articles of conversion.

We think it may be said that it appears without dispute that the defendant, without the payment of any consideration, took over all the property and assets of every kind and character owned or controlled by its predecessor, including money, bills receivable, bank account and good will. It used the same minute book and corporate seal used by its predecessor, as well as the stationery and supplies of its predecessor. It was stipulated that no ouster proceedings were ever instituted against defendant or its predecessor.

Defendant's motion for summary judgment was denied and the cause was tried on its merits. At the close of all the testimony defendant moved for a directed verdict on the grounds, among others, that, "Under the law and the evidence the defendant had no corporate existence on September 22, 1941, and further it had not assumed or sustained any liability for the matters alleged in plaintiff's complaint"; also that plaintiff had failed to prove a duty or breach thereof on defendant's part and failed to make a case on its cause of action, and that under the law and the evidence it was the custodian of trust funds and not liable in a tort claim. The motion was denied and the cause submitted to the jury on instructions to which defendant saved certain exceptions. The facts going to the merits of the cause of action will be developed during the course of this opinion. The jury returned a verdict in favor of the plaintiff and against the defendant on all the issues and assessed plaintiff's damages in the sum of $7,413.94. From the judgment entered on this verdict defendant prosecutes this appeal.

Defendant seeks reversal on substantially the following grounds: (1) the court erred in denying its motion for summary judgment and its motion for a directed verdict because it had no corporate existence on September 22, 1941, and had not assumed liability for the tort alleged in plaintiff's complaint; (2) plaintiff failed to prove the breach of any duty on defendant's part; (3) under the evidence defendant is the custodian of trust funds and is not liable in a tort claim; (4) the court erred in admitting evidence which included plaintiff's profit in fixing the value of gas lost by it and in rejecting certain evidence offered by defendant tending to show that high pressure and leaking gas from plaintiff's pipeline might have caused the damage; (5) the court erred in the giving and refusing of certain instructions.

It is strenuously urged by defendant that it was not liable for damages on account of any tort committed by its predecessor. This question is raised both by the denial of its motion for summary judgment and its motion for a directed verdict. It presents a question of law as the facts pertinent to that issue are without dispute. It is the contention of defendant that although without consideration advanced by it it took over all the assets and business of its predecessor and stripped it of any means of paying its debts due creditors, it assumed no liability for the obligations of its predecessor. This result it claims to have achieved by reason of the reorganization of its predecessor. In the final analysis the contention is based upon the assumption that its predecessor was not a corporation but an association of individuals probably constituting a partnership. In form at least its predecessor was a corporation. Section 11, Article XII of the Constitution of Missouri provides as follows: "The term corporation, as used in this article, shall be construed to include all joint stock companies or associations having any powers or privileges not possessed by individuals or partnerships."

Section 4526 of the Revised Statutes of Missouri 1929 provides that, "The term 'corporation,' as used in this chapter, shall be construed to include all joint stock companies or associations having any powers or privileges not possessed by individuals or partnerships."

782

It is elementary that a corporate charter is not subject to collateral attack but can be questioned only by a direct proceeding in the nature of quo warranto. Boatmen's Bank v. Gillespie, 209 Mo., 217, 108 S.W. 74; First National Bank v. Rockefeller, 195 Mo. 15, 93 S.W. 761; Meramec Spring Park Co. v. Gibson, 268 Mo. 394, 188 S.W. 179. It is here contended, however, that there was no law authorizing the organization of defendant's predecessor and hence its corporate existence was subject to collateral attack by an individual. In support of this contention appellant relies strongly on the decision of the Supreme Court of Missouri in State on Inf. Huffman v. Sho-Me Power Co-op., 354 Mo. 892, 191 S.W.2d 971. We think counsel have a misconception of the teaching of this case. The court did not hold that the Sho-Me Power Cooperative was not a corporation, but held that it had usurped powers not granted it. It purchased the properties of a public utility, took over its franchise and was operating as a public utility, and for this abuse or usurpation of power writ of ouster issued. That the Sho-Me Power Cooperative was recognized as a corporation is apparent on the face of the proceeding. It was proceeded against as a corporation. If the quo warranto proceeding was intended to determine the validity of the charter based on a theory that the corporation never had a legal existence, then the individuals claiming the right to be a corporation would have been the only proper defendants. In fact, the filing of an information in quo warranto proceedings against the corporation itself by its corporate name is an admission of the existence of the corporation. 44 Am. Juris. Title Quo Warranto, Sec. 80. By the same token in a proceeding to dissolve a corporation or to forfeit its charter for the abuse or usurpation of power of franchises not granted it, the proceeding must be brought against the corporation itself. In the Sho-Me case, the proceeding was properly brought against the corporation because the forfeiture was sought not because it had no legal existence as a corporation but because as a corporation it had usurped powers and franchises which it did not properly possess. Defendant's predecessor was then a corporation. Whether or not it had usurped powers or franchises not granted it is a matter which can not be determined except on direct proceeding in the nature of quo warranto. The most that can be said here is that grounds for forfeiture or ouster may have existed because the corporation usurped powers not granted it. This, however, is not tantamount to a forfeiture or ouster. In 13 Am. Jur., Sec. 1335, the rule is thus stated: "Although a corporation may forfeit its charter by an abuse or misuser of its powers and franchises, the established general rule is that the forfeiture can only take effect upon a judgment of a competent tribunal in a judicial proceeding directly instituted for such purpose. The fact that a cause for forfeiture exists does not ipso facto deprive the corporation of its charter; but until a judicial decree to that effect is passed, it will continue its corporate existence and individuals can not avail themselves of the forfeiture in collateral suits. * * *"

We conclude that at all times material to this action defendant's predecessor was a corporation and that the defendant, formed by stockholders and directors of its predecessor corporation, in a reorganization proceeding is in truth and in fact a mere continuation of the predecessor corporation. There is complete identity between defendant and its predecessor in name, stockholders, directors, officers, location of office, property and business.

It is a general rule prompted by the principle of ethical justice that if a new corporation succeeds to all of the assets of an old corporation by virtue of reorganization and not by way of purchase, the new corporation is liable for the debts of the old even though there be no agreement assuming such liability. Vol. 8, Fletcher, Cyclopedia Corporations, Sec. 4014; Vol. 15, Fletcher, Cyclopedia Corporations, Secs. 7327 and 7329; In re Johnson-Hart Co., D.C.Minn., 34 F.2d 183.

We conclude that the court did not err in denying defendant's motion for summary judgment.

In support of the contention that the court should have sustained its motion for a directed verdict it is urged that defendant is not amenable to a suit in tort. Section 12748 of Article 29, Chapter 87, Revised Statutes of Missouri, 1929, R.S. 1949, § 357.010 under which defendant was organized, provides that persons may associate themselves together "as a co-operative association, society or exchange, having all the incidents, powers and privileges of corporations * * *." It therefore had the power to sue and be sued. When a statute authorizing the creation of a corporation provides that the corporation organized thereunder shall have the power to "sue and be sued" a corporation so organized is subject to suit in tort and in contract. Hillis v. Home Owners' Loan Corp., 348 Mo. 601, 154 S.W.2d 761; Forest City Mfg. Co. v. International Ladies' Garment Workers' Union, 233 Mo.App. 935, 111 S.W.2d 934; Prato v. Home Owners' Loan Corp., 1 Cir., 106 F.2d 128; Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Mortimer v. Farmers' Mutual Fire & Lightning Ins. Ass'n, 217 Iowa 1246, 249 N.W. 405.

It is noted that Section 5405(a), Revised Statutes of Missouri, 1939, R.S.1949, § 394.170(1), provides that revenues of a corporation in excess of the amount necessary "To defray expenses of the cooperative and of the operation and maintenance of its facilities" are to be distributed to the members. We are not impressed with the suggestion that defendant is a charitable corporation and hence the charitable trust fund doctrine may be invoked, nor do we think it can be said that it operates without profit. Revised Statutes of Missouri, 1939, Section 5405 supra, provides that funds not needed for necessary expenses, etc., "shall, unless otherwise determined by a vote of the members, be distributed by the cooperative to its members, as patronage refunds * * * ."

Defendant having taken over without consideration the entire business of its predecessor, it thereby became responsible for its tort liability.

In further support of the contention that the court should have granted defendant's motion for a directed verdict it is urged that the explosion of dynamite was not the proximate cause of plaintiff's damage and that the plaintiff was guilty of contributory negligence. This necessitates some review of the testimony to determine whether or not there was substantial evidence supporting the verdict of the jury. The jury having found the issues in favor of the plaintiff, the evidence must, of course, be viewed in a light most favorable to it. Plaintiff is also entitled to such favorable inferences as may reasonably be drawn from the evidence. Railway Express Agency v. Mackay, 8 Cir., 181 F.2d 257; Westland Oil Co. v. Firestone Tire & Rubber Co., 8 Cir., 143 F.2d 326.

There was evidence that the place where the charge of dynamite was exploded was 75 feet from the edge of the highway. A witness for the plaintiff testified that he looked into the hole made by the explosion and that the ends of the pipe were leading into the center of the hole. It appears without dispute that the damage to the pipeline occurred simultaneously with the explosion of the dynamite. True, it appeared on cross-examination of one of plaintiff's witnesses that he had on a prior occasion testified that the permanent hole, the place where the dynamite was discharged, was 75 feet from the center of the highway. This witness was not an officer of the company and what he may have said at some other time, not being a part of the res gestae, was admissible only for the purpose of impeachment and as going to the credibility of the witness and to the weight of his testimony. This statement by the witness, made in a prior proceeding, would not constitute affirmative evidence of the facts so stated. Southern R. Co. v. Gray, 241 U.S. 333, 36 S.Ct. 558, 60 L.Ed. 1030; MacLachlan v. Perry, 63 App.D.C. 24, 68 F.2d 769; Ellis v. United States, 8 Cir., 138 F.2d 612; United States v. Michener, 3 Cir., 152 F.2d 880; New York Life Ins. Co. v. Bacalis, 5 Cir., 94

F.2d 200. However, other testimony was to the effect that the hole was 75 feet from the edge of the highway. This latter testimony would locate the point where the dynamite exploded in the immediate vicinity of the plaintiffs' pipeline, and the jury presumably so found.

 It is also urged that plaintiff was guilty of contributory negligence. This contention is based upon testimony of two of defendant's witnesses to the effect that plaintiff's District Foreman, Steele, gave them his approval to dig the anchor hole at the location of the explosion. The testimony, however, was not without dispute. Steele testified that he did not go south of the highway with these witnesses but that he warned them of the location of the pipeline south of the highway. He testified that, "When they were using this stick of dynamite by the two-inch pipeline I told them there was a 22-inch high pressure line across the highway there, that using dynamite around those high pressure pipelines would be very dangerous." There was also testimony by Mr. Maddux, a meter engineer in the employ of plaintiff, that Mr. Steele had told these employees, "That there was a natural gas pipeline, a two-inch line in that very close vicinity and also that we had two main lines across the road." The jury was not required to believe the testimony of defendant's witnesses and it was entitled to consider the improbability that Mr. Steele, who knew of the location of the pipeline, would have deceived defendant's employees with reference thereto. The question of negligence is ordinarily one of fact to be determined by the jury and it can not be said as a matter of law that the plaintiff was guilty of contributory negligence. On this phase of the case we conclude that it was not error to deny defendant's motion for a directed verdict.

 Defendant offered to prove that there were three gas explosions on plaintiff's pipeline between 1941 and 1948. It appears that plaintiff's pipeline extended over many miles and the indefinite offer of proof was, we think, so remote as to be wholly irrelevant and immaterial. These explosions, whatever they may have been, could have had no apparent bearing upon the issues involved in this action. So far as appears they occurred under different conditions. The Court of Appeals of Missouri, in Schaefer v. Frazier-Davis Const. Co., 125 S.W.2d 897, 898, which was a case in which damages caused by blasting were involved, in referring to somewhat similar testimony, said: "Such testimony should have been excluded for the reason that it injected into the case collateral and immaterial issues which had no bearing upon the question as to whether or not plaintiffs' property had been damaged as the result of blasting on the part of the defendant, and which collateral issues, under the pleadings, the defendant had no notice would be presented, and therefore was not prepared to rebut. Such collateral and immaterial issues could but tend to confuse and mislead the jury."

We think the offer was properly rejected as having no bearing on the issues to be tried.

 There were exceptions to certain of the instructions given by the court. We have given consideration to the instructions as a whole and so considered we are clear that they fairly presented all the contested issues to the jury and were not prejudicial to the defendant. Defendant criticized a portion of the court's instructions relating to the measure of damages for the loss of gas. The court instructed the jury that if they found in favor of the plaintiff then they should award as plaintiff's damages "the reasonable market value of the gas, if any, ignited and lost as a direct and proximate result of the explosion mentioned in the evidence * * *." There was evidence of the value of the gas lost because of the explosion. Where damages are recoverable for loss of property the measure of damages is ordinarily the market value of the property so lost at the place destroyed and this is the rule in Missouri. Shahan v. Lusk, Mo.App., 190 S.W. 43; Finn v. Indemnity Co. of America, Mo.App., 297 S.W. 175. See,

also: Standard Oil Co. of New Jersey v. Southern Pacific Co., 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890.

 Defendant requested the court to charge that, "the employees of the defendant are not chargeable with any negligence in not making any inquiry at any office of any State Highway employee in Mexico, Missouri, or at any office of the State Highway Department at ony other place in Missouri, or at the County Courthouse in Mexico relative to State Highway maps pertaining to the construction of Highway 22, and such matter is withdrawn from your consideration and will not be considered by you in arriving at a verdict." This negative instruction was, we think, addressed to the discretion of the court. As said by the Supreme Court of Missouri in Larey v. Missouri-Kansas-Texas R. Co., 333 Mo. 949, 64 S.W.2d 681, 685: "Our system is to tell the jury what issues are in the case rather than to tell them what issues are not." The location of plaintiff's pipeline was a physical fact and apparently in addition to this there was available to defendant and its employees record evidence as to that location and the jury were entitled to consider all these facts and circumstances, including the fact that defendant's manager should have known of the location of the pipeline when he sent its employees out on a mission which included the use of dynamite.

It is urged that the instructions were erroneous because they required the jury to find that the defendant's employees dug a hole in the immediate vicinity of the pipeline. The pleadings were amended to conform to the proof and we are of the view that there was no error in permitting such an amendment. Neither is there merit in the contention that the undisputed evidence proved that the hole was dug over 17 feet distant from the pipeline. The evidence, as we have heretofore indicated, warranted the jury in finding that the hole was dug and the blast discharged in the immediate vicinity of plaintiff's pipeline.

We have considered all of defendant's other objections to the instructions and think they are wholly without merit.

We conclude that the court committed no prejudicial error in the trial of this action and the judgment appealed from is therefore affirmed.