**STATE ex rel. Carolyn BROGLIN, Relator,**

**v.**

**The Honorable James F. NANGLE, Judge, Circuit Court of City of St. Louis, Respondent.**

**No. 58452.**

Supreme Court of Missouri, En Banc.

June 24, 1974.

Donald E. Bonacker, Springfield, for relator.

Coburn, Croft, Shepherd & Herzog, John R. Musgrave, St. Louis, for respondent.

MORGAN, Judge.

This original proceeding in mandamus was instituted in the Court of Appeals, St. Louis District; but, after the cause was submitted and an opinion was filed, that court "on its own motion pursuant to Rule 83.02" transferred the cause to this court for "the purpose of re-examining the existing law relative to the issues presented." As the record reflects, such issues were highlighted by the differing opinions of the parties as to the extent, if any, the Wrongful Death Statutes of either Texas or Missouri should control the disposition of a lawsuit pending in Missouri which involved a death resulting from an accident in Texas, in light of the decision of this court in Kennedy v. Dixon, 439 S.W.2d 173 (banc 1969), wherein it was held, l. c. 184, that: "We have concluded that we should abandon the inflexible *lex loci delicti* rule in favor of the rule set forth in § 145 of the Proposed Official Draft of Restatement (Second) on Conflict of Laws." [Adopted May 23, 1969]. See also Griggs v. Riley, 489 S.W.2d 469 (Mo.App.1972).

On September 19, 1970, Lawson E. Broglin was driving a tractor-trailer unit for Roadway Express, Inc., near Coppell, Texas, when the unit collided with a freight train operated by the St. Louis Southwestern Railway Company, and he died instantaneously as a result of injuries suffered in the collision. It is agreed that the deceased lived in Springfield, Missouri, and for more than a year prior to the tragedy had worked full time on a "regular run" between Springfield and Dallas, Texas. Survivors were his wife in Missouri (relator herein), a daughter in Illinois, a daughter in California and his mother in Tennessee.

Thereafter, the wife filed an action in the circuit court for the City of St. Louis against the railroad for damages in the amount of $251,298.78 in favor of the survivors as provided in the Wrongful Death Statutes of Texas (Texas Civil Statutes, Articles 4671–4678).[1] In response thereto, the railroad filed a motion to strike certain designated portions of the petition pertaining to those persons entitled to sue and/or participate in any settlement or judgment, certain items or elements of alleged compensable damage and to reduce the amount of the prayer to $50,000, all in conformity to Sections 537.080 and 537.100, RSMo 1969, V.A.M.S. (as such sections then provided)[2], on the stated premise that: ". . . plaintiff's alleged cause of action for the wrongful death of plaintiff's spouse is governed by the statutes and laws of the State of Missouri and not by the laws and statutes of the State of Texas." The trial court sustained the motion and relator sought mandamus to set aside that ruling on the premise that the laws of Texas should govern disposition of the cause.

The court of appeals, prior to transfer, had filed an opinion sustaining the relator's position and had made its writ peremptory by directing the respondent trial judge to vacate and set aside his order sustaining the railroad's motion to strike. The opinion was written by McMillian, J., wherein a very exhaustive consideration and review of the law of conflict of laws was made, and we approve and agree with

1. Which, insofar as of interest here, provide for damages for the surviving spouse, children and parents of the deceased with no monetary limit on the amount of recovery.

2. Which, insofar as of interest here, provide for recovery by the surviving spouse of the deceased in an amount not exceeding $50,000.

the conclusion reached therein. However, the transfer order followed the filing of a dissent (from denial of a motion for re-hearing) filed by Smith, J., wherein he said, in part: "The opinion of the Court deals at length with choice of laws princi-ples and I have no disagreement with the discussion or decision as it regards choice of law. But implicit in any such discus-sion is a determination that in fact there does exist a *choice* of laws. Before ever reaching the question of which law to choose, we should first determine whether the wrongful death statute of Missouri could ever apply to the fact situation here. By implication, at least, the opinion of the Court holds that Missouri can and has created a *statutory* cause of action, where none exists at common law, having extraterritorial effect upon accidents oc-curring in other sovereignties."

We consider first the concern of Judge Smith that the majority opinion of the Court of Appeals had assumed that relator had a choice of proceeding under the wrongful death statutes of either Texas or Missouri insofar as her basic cause of ac-tion was concerned. We agree that the proposed opinion did make such an as-sumption without deciding whether or not the relevant statutes of Missouri could be given extra-territorial effect to create a cause of action for alleged negligent con-duct in Texas. The parties agree that his-torically Missouri has not given such ef-fect to a statutory cause of action. For instance, as said in Rositzky v. Rositzky, 329 Mo. 662, 46 S.W.2d 591, l. c. 593[2] (1931): ". . . actions for damages on account of the death of any person are strictly of statutory origin, and exist and can be maintained only when there is a statute in force at the time and *place of the injury* creating and giving to the person suing such right of action." (Emphasis added.) Schueren v. St. Louis & N. E. Ry. Co., 192 S.W. 965 (Mo.1917); Cum-mins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920 (Mo. banc 1933); Vol. 8A, Missouri Digest, Courts, ⊝⊶8. For at least two reasons, this opinion

need not be extended by giving considera-tion to whether or not such historical prece-dents are still valid. First, the restatement approach to resolution of inter-state prob-lems does not purport to create causes of action where none existed. The "Introduc-tion" to the restatement of "Conflict of Laws 2d" at page 32 states that: "The range of application of a statute, questions of ju-risdiction aside, involves a problem of stat-utory construction and is beyond the scope of the Restatement of this Subject." Sec-ond, the railroad does not contend that rela-tor's cause of action did arise under the stat-utes of Missouri, but, to the contrary, con-cedes that it arose, if at all, under the stat-utes of Texas when it submits that: "Clear-ly, the issue before Respondent in the trial court and here before this Court was and is as follows: Under the Missouri choice of law rule, once the cause of action is created by the Texas wrongful death statute, will certain provisions of the Missouri wrongful death statute be applied rather than the Texas provisions where the Missouri pro-visions are in conflict with the Texas pro-visions? * * * Respondent did not hold that the cause of action in this case was created by the Missouri wrongful death statute, but rather, held that once it was created by the Texas wrongful death statute, certain provisions of that statute were in conflict with the Missouri statute and/or contrary to Missouri public policy and inasmuch as Missouri's interest in these particular issues was dominant over Texas', the Missouri choice of law rule, as promulgated by Kennedy v. Dixon, supra, required application of the provi-sions of the Missouri wrongful death stat-ute as to those issues."

We agree with the railroad that the is-sue as posed by it is the sole matter for disposition; and, that such an approach is consistent with the rationale of the Re-statement and the law of this state as pro-nounced in Kennedy v. Dixon, supra.

Section 175 of the restatement provides that: "In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabili-

ties of the parties unless, with respect to the *particular issue*, some other state has a more significant relationship . . ."[3] (Emphasis added.) Two *particular issues* submitted by the railroad are: (1) that the beneficiaries should be limited to those designated in the statutes of Missouri; and (2) that the damages should be in accordance with the statutes of Missouri. Before considering such issues, we do note that Section 177 of the restatement (pertaining to beneficiaries) and Section 178 thereof (pertaining to damages) both provide, as a general rule, that the law of that state selected in connection with Section 175 shall control. From all of which, it can be seen that although the restatement approach avoids the rigidity of the *lex loci delicti* rule, it also contemplates and allows for certainty of result absent some local compelling state interest to the contrary.

■ First, we consider the beneficiary question. In the original suit, the widow sought damages on behalf of all the survivors noted as provided in the statutes of Texas. Under the statutes of Missouri, she could have sought and retained for herself all damages recovered. Does Missouri have any legitimate reason for preventing the widow sharing any recovery with the mother and daughters of the deceased? No persuasive reason has been submitted, and we have been unable to think of one. To the contrary, it would be undesirable, if not somewhat futile, for Missouri to declare that a cause of action of the mother in Tennessee and the daughters in Illinois and California had been vitiated by some compelling interest of Missouri to limit recovery to the widow.

■ Second, we consider the question of damages. In this connection, we approve of the approach taken by Judge McMillian in considering the "contacts" and "significant relationships" found in both Texas and Missouri, to-wit:

"The contacts presented by the case before us show that Texas is the place of the accident, the place of the conduct causing the accident, and the place of defendant's [railroad's] principal business operations. Missouri is relator's [the widow's] and decedent's residence and defendant's place of incorporation. There was no relationship between the parties prior to the accident.

"Respondent has placed much weight on the fact that defendant is a Missouri corporation, arguing that Missouri has a primary interest in litigation between its citizens. We do not see the significance of this contact in tort actions. Missouri law does hold that a corporation is a citizen, resident, and domiciliary of the state of its incorporation, notwithstanding that it may do business elsewhere. State ex inf. Dalton v. Riss & Co., 335 S.W.2d 118, 131 (Mo. banc 1960). But a corporation is an artificial person at law, and its residence or citizenship is therefore fictional. Forest City Mfg. Co. v. International L.G.W. union [233 Mo.App. 935], 111 S.W.2d 934, 940 (Mo.App.1938). The trend of modern decisions is to look not at the fiction but at the realities disclosed by the facts. Wirt Franklin Petroleum Corp. v. Gruen, 139 F. 2d 659, 660 (4th Cir., 1944); Restatement, Second, Conflict of Laws, § 11, Comment *l* § 145, Comment e. Defendant admits that its principal place of business is in Texas. Seven of its eleven general officers are

---

3. Resolution of such issues is to be made under the guidelines of § 6 of the Restatement, Conflict of Laws 2d, to-wit:
   "Choice-of-Law Principles
   (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
   (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
   (a) the needs of the interstate and international systems,
   (b) the relevant policies of the forum,
   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
   (d) the protection of justified expectations,
   (e) the basic policies underlying the particular field of law,
   (f) certainty, predictability and uniformity of result, and
   (g) ease in the determination and application of the law to be applied."

stationed in Texas, and only one in Missouri. Its legal and accounting departments are in Texas, and only one in Missouri. It has more than twice as many miles of track in Texas as in Missouri. The train which collided with the decedent's truck was on a run which originated in Texas. Furthermore, defendant is considered under Texas law to be a domiciliary-in-fact of that state, by virtue of having its principal place of business in Texas. Merchants Fast Motor Lines, Inc. v. Levens, 161 S.W.2d 853 (Tex.Civ.App.1942) and Mergenthaler Linotype Co. v. Herrmann, 211 S.W.2d 633 (Tex.Civ.App.1948). We therefore find that defendant's incorporation in Missouri is not a significant contact with regard to the facts of this case."

Consideration was also given to the fact: "Defendant is a railroad corporation with its principal place of business in Texas, and relator has alleged negligence by defendant in the maintenance of its grade-crossing equipment and other warning devices. Texas has a significant interest in regulating the conduct of railroad corporations which operate within its borders. See e. g., Title 112, Railroads, Vernon's Ann.Civ.St.Tex. (1925). It has a policy of requiring warning devices at railroad grade-crossings. Arts. 6370, 6371, Vernon's Ann.Civ.St.Tex. (1952). In some cases, Texas courts have required an extraordinary degree of care by railroads in providing adequate warning of approaching trains at grade-crossings. Fort Worth & Denver Ry. Co. v. Williams, 375 S.W.2d 279 (Tex.1964). Furthermore, the Texas death statute specifically names railroads as possible defendants in wrongful death actions, indicating a specific policy of providing compensation for the relatives of victims of railroading accidents."

Specifically, on the question of damages, Judge McMillian found that: "Here we are confronted with a true conflict of both laws and state policies. Defendant is incorporated in Missouri, and this state limits damages for wrongful death to a maximum of $50,000, indicating a policy of protecting defendants from larger judgments [now amended, Laws 1973]; but, defendant is also a Texas domiciliary under the laws of that state. While the Texas statute is silent on the measure of damages recoverable, the silence does indicate a state policy of allowing unrestricted judgments for wrongful death. Marmon v. Mustang Aviation, Inc., 430 S.W.2d 182, 192 (Tex. 1968) (dissenting opinion). Texas would therefore seem to have some interest in the admonitory effect an unrestricted judgment would have on a corporation domiciled in that state. More importantly, Texas has a definite interest in having the full extent of its laws control the activities within its borders of corporations which locate their principal place of business in that state.

"The question is which state's interests are to be given more weight. We hold that Texas has the dominant interests in the issue of damages and that its law should control.

"In reaching decisions of this nature, the late Professor Currie has cautioned that 'If the court finds an apparent conflict between the interests of the two states it should reconsider. A more moderate and restrained interpretation of the policy or interest of one state or the other may avoid conflict.' See Currie's 'Comments on Babcock v. Jackson,' 63 Colum.L.Rev., p. 1242 (1963). If the state interests raised by this case are reconsidered as suggested, the conflict disappears. The Missouri interest in the damages issue is hinged solely on the fact that defendant is incorporated here. But, we have already said that the place of incorporation is not a significant contact in tort actions. It would strain reality to afford a relative advantage of Missouri law to a corporation which is incorporated here but chooses to locate its principal place of business elsewhere. Texas has a substantial interest, on the other hand, in exercising control over the in-state activities of corporations which locate in that state.

Since this interest is not in actual conflict with any significant Missouri interest, the Texas law must be applied.

"In support of his position, respondent has referred us to two foreign cases involving multi-state wrongful death actions, Reich v. Purcell [67 Cal.2d 551, 63 Cal. Rptr. 31], 432 P.2d 727 (Calif.1967) and Satchwill v. Vollrath Co., 293 F.Supp. 533 (E.D.Wisc.1968). Both cases are readily distinguishable from the instant case. In Reich v. Purcell, two Ohio residents were killed when their car collided in Missouri with another car operated by a California resident. At issue was the Missouri limitation on damages for wrongful death. The court refused to apply the Missouri limitation, saying that the ' . . . state of the place of the wrong has little or no interest in such compensation when none of the parties reside there . . .' ([63 Cal. Rptr. at 35, 432 P.2d] at 731). In the instant case, the defendant is a business domiciliary of the state of the wrongful death and its business activities are subject to that state's police powers. Furthermore, the *Reich* decision is based not on the Restatement, Second's, approach to conflicts, but on Professor Leflar's choice influencing considerations. As Professor Leflar himself has noted, these approaches are different. Leflar, 'Comments on Reich v. Purcell,' supra. [15 U.C.L.A.L.Rev. 637 (1968)].

"The federal District Court in Satchwill v. Vollrath Co., supra, also drew on Professor Leflar's choice influencing considerations, following Wisconsin law, but that decision actually supports the result we have reached here. The decedent in that case was an Ohio resident who died as a result of injuries suffered in an accident in a factory in Wisconsin. The factory was owned by a Wisconsin corporation, the defendant. The court held that distribution of damages among the decedent's Ohio heirs would be governed by Ohio law, but that the Wisconsin law would be applied to limit the measure of damages since Wisconsin, as the locus of the tort and defend- ant's domicile, had a greater interest in that issue. Distribution of damages is not at issue in the instant case. The district court's ruling on the extent of damages is similar to the one we make today."

In addition to approving of the conclusion reached as well as the approach to evaluating the significance of the "contacts" noted, we add only the comment, i. e., that Missouri has removed the $50,000. limit on recovery for wrongful death by amendment of Section 537.090, RSMo 1969, Laws 1973, p. ——, H.B.No. 173, § 1. Such action by the General Assembly makes non-persuasive the railroad's argument that Missouri has some compelling interest to restrict recovery in the instant matter.

Thereafter, Judge McMillian further concluded:

"Respondent's last contention in his brief and return to our alternative writ is that mandamus will not lie to control the discretion of a court. State ex rel. Burke v. Ross, 420 S.W.2d 365, 368 (Mo.App. 1967). While we do not quarrel with this argument, the present case does not involve an exercise of discretion. There is but one proper decision. We realize that the law of conflicts in Missouri is undergoing some changes as a result of the *Kennedy* case, and there are few current cases which would guide respondent in making his choice of laws' decision. But, the Restatement, Second, Conflict of Laws, §§ 145, 175, 177 and 178, is clear in pointing to the decision we have reached today. Furthermore, the *Kennedy* case requires lower courts to continue to apply the substantive law at the place of the wrongful death, in this case Texas law, when they are faced with conflicts they cannot resolve. Kennedy v. Dixon, 439 S. W.2d 173, 185 (Mo. banc 1969)."

The alternative writ of mandamus heretofore issued is made peremptory, and respondent is directed to vacate and set aside his order sustaining defendant's motion to strike.

All concur.