STATE of Missouri ex rel. AUTOMOBILE CLUB INTER–INSURANCE EXCHANGE, Christine L. Federspeil and Elizabeth Todd, Relators,

v.

The Honorable Carl R. GAERTNER, Judge of the Circuit Court, City of St. Louis, Division 1, Respondent.

No. 63112.

Supreme Court of Missouri, En Banc.

Aug. 2, 1982.

Ben Ely, Jr., Douglas B. Remmers, Gerre S. Langton, F. Douglas O'Leary, St. Louis, for relators.

Edward L. Dowd, Francis M. Oates, Kevin M. Cushing, Robert F. Ritter, St. Louis, for respondent.

BARDGETT, Judge.

This proceeding in prohibition was filed in the Missouri Court of Appeals, Eastern District, by relators, Automobile Club Inter-Insurance Exchange (Exchange), an unincorporated association, and two of its subscribers (policyholders) Federspeil and Todd, seeking to prohibit respondent judge from proceeding in two separate uninsured motorist suits filed in the Circuit Court of the City of St. Louis by one Mary F. Kennedy and one Michael H. Baggot, who are also subscribers (policyholders) to the Exchange. Relators contend the Circuit Court of the City of St. Louis lacks jurisdiction over the person of relators. The court of appeals issued its preliminary writ of prohibition and subsequently, after briefing and argument, quashed the writ. On application of relators, the cause was transferred here by this Court.

In the underlying suits in circuit court, Kennedy, a resident of Marion County, Missouri, alleges that she was involved in an accident in Marion County with an uninsured motorist who also resides in Marion County. Baggot, a resident of the state of Illinois, alleges that he was involved in an accident with a "hit and run driver" in Granite City, Illinois. These suits are for damages arising out of the stated accidents and are brought pursuant to the uninsured motorist clause of the policies issued by relator Exchange.

The amended petitions in the underlying cases are the ones to which relators, as defendants therein, filed motions to dismiss for lack of jurisdiction over their persons. The petitions allege, *inter alia*, that the Exchange is a corporation and maintains an office in and operates its business in the City of St. Louis. The petitions also allege that the Exchange is an inter-insurance exchange under the laws of Missouri and, as

such, the individual subscribers thereto are subject to suit as a class and that defendants Federspeil and Todd are subscribers to said Exchange and representative members of the class of subscribers and reside in the City of St. Louis.

The trial court overruled relators's motions to dismiss, but the record does not reflect specific findings as to the corporate status of the Exchange or whether it maintains an office for business purposes in the City of St. Louis. Nevertheless, the return of respondent judge to the petition for writ of prohibition asserts, *inter alia*, that he overruled relators's motions to dismiss because (a) the Exchange is an unincorporated association and under Rule 52.10[1] may be sued through its members (Federspeil and Todd) and they reside in the City; (b) the Exchange maintains an office for the conduct of its usual business in the City; and (c) that the Club Exchange Corporation is the attorney-in-fact for the Exchange and the Exchange does business by and through the corporate attorney-in-fact and, therefore, venue is proper under § 508.040, RSMo 1969.

The underlying plaintiffs, Kennedy and Baggot, maintain in this proceeding that their right to sue in the City of St. Louis is granted by Rule 52.10. The real issue here is whether §§ 379.650–.800, RSMo 1978, authorizes an insurance reciprocal or exchange to be sued as a jural person or entity and, if so, whether the members of the insurance association remain subject to suit as a class under Rule 52.10.

The first question is whether Missouri law affords entity status to a reciprocal or inter-insurance exchange so as to allow it to be sued as a jural person.

■ At common law, an unincorporated association possessed no status apart from

the persons comprising it and was not an entity. 6 Am.Jur.2d *Associations and Clubs* § 1, at 429 (1963). As this Court recognized in *Morris v. Willis*, 338 S.W.2d 777 (Mo. 1960):

> Voluntary unincorporated associations exist under the common law right of contract and have no existence apart from the contract of association. The general rule is, *in the absence of a statute, they cannot sue or be sued in their common or associate name for the reason such an association*, absent a statute, *has no legal entity distinct from its membership.*

*Id.* at 779 (emphasis added). Therefore, in the absence of statute, an unincorporated association cannot be sued as a jural person.

■ Although an exchange is technically an unincorporated association simply because it is not a corporation as such, the statutes governing the operation of an exchange—§§ 379.650–.800, RSMo 1978, and related statutes—demonstrate the legislative purpose of both requiring an exchange to be tightly structured in a specific manner and to afford certain rights, and prescribing limitations on the activity and business of such an insurance organization. The legislature was familiar with the almost insurmountable problem one would have in suing an exchange as an unincorporated association if the party were required to sue all the members in order to subject the exchange's assets to a judgment. Not even the general class action procedure would suffice to meet the problem with efficiency and fairness to a litigant, nor would it make sense to relegate a plaintiff to class action procedure when the organization sued was, in effect, conducting its business as an entity with thousands of individual insureds who, in fact, had no ongoing interest in the exchange except as an insured thereof—

---

1. Rule 52.10 provides:

An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members. In the conduct of the action the court may make appropriate orders corresponding with those described in Rule 52.08(d), and the procedure for dismissal or compromise of the action shall correspond with that provided in Rule 52.08(e).

Nothing in this Rule shall be construed to affect the rights or liabilities of labor unions to sue or be sued.

much the same as an insured of any other insurance company.

The legislature met the problem by the enactment of § 379.680,[2] which affords the right to a plaintiff to sue the exchange by simply serving the director of insurance of the state of Missouri and thereby subjecting the exchange's assets to judgment without suing or serving any individual subscriber. Thus, Missouri has, in essence, afforded entity status to an exchange sued under § 379.680 and it is subject to suit as a jural person.[3] The assets of the exchange are subject to the judgment in such a suit. In such a suit the plaintiff need not serve subscribers and therefore has no burden of satisfying the requirements of Rule 52.10 with respect to showing that certain members are representative members of the association and will "fairly and adequately protect the interests of the association and its members."

The Court holds that in Missouri a reciprocal or inter-insurance exchange is recognized as a jural person and is suable as an entity, pursuant to § 379.680. Thus, the second issue that must be resolved is whether the members of the Exchange in this case remain subject to suit as a class under Rule 52.10.

The first paragraph of Rule 52.10 is a verbatim rescript of Fed.R.Civ.P. 23.2. As the Committee Note to 52.10 recognizes, "This is the same as Rule 23.2 of the Federal Rules of Civil Procedure with the following sentence added: 'Nothing in this Rule shall be construed to affect the rights or liabilities of labor unions to sue or be sued.'" Although federal Rule 23.2 has

been adopted by several states,[4] the briefs do not cite any state cases involving the issue presented here and this Court has discovered none. Rule 23.2, however, has been construed in a number of federal cases. The context in which many of these opinions dealing with Rule 23.2 are written, however, involves residency of an unincorporated association reference the diversity of citizenship for federal jurisdictional purposes. State courts do not have the same problem, but the discussion in those cases as to the purpose of Rule 23.2 is helpful in determining the purpose of our Rule 52.10, which, as stated previously, is essentially the same as federal Rule 23.2. Thus, the federal opinions are instructive to this case with respect to the reason for and background of Rule 23.2.

The historical background of the rule is stated in *Sembach v. McMahon College, Inc.*, 86 F.R.D. 188 (S.D.Tex.1980):

In order to properly interpret Rule 23.-2, it is necessary to understand its historical background. At common law, an unincorporated association was not a legal entity. It could not be a formal party to a lawsuit and could only sue or be sued through joinder of all of its members. 6 *Wright & Miller* § 1564, at 742, and cases cited therein. In 1922, however, the United States Supreme Court held in *United Mineworkers of America v. Coronado Coal Company*, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922), that an unincorporated association could *be sued*, even if state and common law said otherwise, if the purpose of the suit was to

**2.** 379.680. Service of process on director—method.—1. Concurrently with the filing of the declaration provided for by the terms of section 379.670, the attorney shall file with the director of insurance an instrument in writing, executed by him for the subscribers, conditioned that, upon the issuance of certificate of authority provided for in section 379.750, service of process may be had upon the director of insurance in all suits in this state arising out of the policies, contracts or agreements, which service shall be valid and binding upon all subscribers exchanging at any time reciprocal or interinsurance contracts through the attorney.

2. Three copies of the process shall be served, and the director of insurance shall file one copy, forward one copy to the attorney, and return one copy with his admission of service.

**3.** *See State ex rel. Subscribers at Eagle Reciprocal Exch. by Mo. Managerial Corp. v. Brady*, 308 S.W.2d 652 (Mo. banc 1958).

**4.** See Federal Procedure, L.Ed., Statutes and Rules, Comparator—Rule 23.2, at 126–27 (1981), for references to other states with respect to adoption of a rule similar to federal Rule 23.2.

enforce a substantive federal right against it. In 1938, the holding of that case was extended by the passage of the original Rule 17(b), Fed.R.Civ.P. That rule, which for our purposes has not changed, said that an unincorporated association could *sue*, as well as *be sued*, when the purpose of the suit was to enforce a substantive federal right. Rule 17(b) also said that, when no federal right was involved in the suit, the federal court should look to the law of the state in which it was sitting to determine the capacity of the unincorporated association to sue or be sued.

This solved the problem of unincorporated associations' access to federal courts where jurisdiction was based on the presence of a federal question, 28 U.S.C. § 1331, but left two problems where jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. First, some federal courts were still sitting in states which followed the common law rule. In diversity actions brought in these courts, unincorporated associations could still not be treated as legal entities and could neither sue nor be sued in their own names. Second, unincorporated associations, for diversity purposes, have no citizenship of their own. *United Steelworkers of America, AFL–CIO v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889). The courts look to the citizenship of each of the unincorporated association's members to determine whether diversity jurisdiction exists. *Great Southern Fire Proof Hotel Company v. Jones*, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900). Since diversity jurisdiction does not exist unless there is complete diversity of citizenship, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), many unincorporated associations still could not sue or be sued in federal courts, even when they could sue and be sued in state courts.

The federal courts soon came upon a solution to these problems: the class action device. One or two members of the unincorporated association were named as representatives of a class consisting of all of the association's members and the class was certified as a "true class" under the original Fed.R.Civ.P. 23(a)(1). *Tunstall v. Brotherhood of Locomotive Firemen and Enginemen*, 148 F.2d 403 (4th Cir. 1945). *See also Calagaz v. Calhoon*, 309 F.2d 248, 251–252 (5th Cir. 1962). Through this device, the unincorporated association could essentially be treated as a jural entity, although it still could not be an official party to the suit. Furthermore, as the citizenship of a class is determined for diversity purposes by the citizenship of the class representatives, *Id.* at 253, an unincorporated association could get into federal court so long as any of its members had citizenship diverse from that of the opposing party.

In 1966, the Federal Rules of Civil Procedure were revised. Rule 23 was completely rewritten and Rule 23.2 was added. The latter's purpose was a simple one: to allow the practice followed prior to 1966 under the original Rule 23 to be conducted without change. *Wright & Miller* § 1861, at 456; Cohen, *The New Federal Rules of Civil Procedure*, 54 Geo. L.J. 1204, 1227 (1966); Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv.L.Rev. 356, 387 n. 119 (1967). Rule 23.2 was promulgated to permit unincorporated associations to continue to utilize the class action procedure to get into federal court in diversity cases.

*Id.* at 191–92 (footnotes omitted).

The Notes of the Advisory Committee on Rules also recognized this purpose of Rule 23.2, wherein it is stated:

Although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give "entity treatment" to the association when for formal reasons it cannot sue or be sued as a jural person under Rule 17(b). See Louisell & Hazard, Pleading and Procedure; State and Fed-

eral 718 (1962); 3 Moore's Federal Practice, par. 23.08 (2d ed. 1963); *Story, J. in West v. Randall*, 29 Fed.Cas. 718, 722–23, No. 17,424 (C.C.D.R.I.1820); and, for examples, *Gibbs v. Buck*, 307 U.S. 66 [59 S.Ct. 725, 83 L.Ed. 1111] (1939); *Tunstall v. Brotherhood of Locomotive F. & E.*, 148 F.2d 403 (4th Cir. 1945); *Oskoian v. Canuel*, 269 F.2d 311 (1st Cir. 1959). Rule 23.2 deals separately with these actions, referring where appropriate to Rule 23.

And in *Suchem, Inc. v. Central Aguirre Sugar Co.*, 52 F.R.D. 348 (D.P.R.1971), the court spoke of the purpose behind Rule 23.2 and held that if the unincorporated association was suable as a jural person in the state where the federal court sat then the purpose behind 23.2 was satisfied and the association was not suable as a class. The court stated:

> The purpose behind Rule 23.2, is found in the Committee Notes, which state that although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give "entity treatment" to the association when for formal reasons it cannot sue or be sued as a jural person under Rule 17(b). In other words, Rule 17(b), which deals with the capacity to sue or to be sued, provides that the capacity of an unincorporated association to sue or be sued shall be determined by the law of the state in which the District Court is held. Therefore, when the law of the state in a particular case does not provide an unincorporated association with capacity as a jural person to sue or to be sued, then and *only* then does the mechanism of Rule 23.2 come into operation and is available as a way of overcoming this lack of capacity by suing the individual representatives of the unincorporated association. This, as a result, gives the unincorporated associations the so-called entity treatment. Nevertheless, one must never forget that for purposes of diversity jurisdiction, in cases where one of the parties is an unincorporated association, even if the association has the capacity to sue or to be sued according to state law, what controls is the residence of its members.

> In our jurisdiction, unincorporated associations are accorded legal personality, as well as capacity to sue or be sued under Articles 27, 28, 29 and 30 of the Civil Code of Puerto Rico. Therefore, since the defendant, pursuant to Commonwealth Law, has capacity to be sued as a result of the application of Rule 17(b) of the Federal Rules of Civil Procedure, then the mechanism provided by Rule 23.2 is not, in any way, available and the defendant must be sued in its own name and not in the name of its representatives. See the cases of *Benz v. Compania Naviera Hidalgo*, 9 Cir., 233 F.2d 62 (1956) and Moore's Federal Practice, Volume 3A, Pages 851 to 865.

*Id.* at 355.

In the underlying uninsured motorist cases, the Exchange can be served and sued as an entity and the assets of the Exchange (unincorporated association) are subject to the judgment. No purpose is served in proceeding against the individual members as a class pursuant to Rule 52.10. Therefore, the Exchange is not subject to being brought into court by service of process on one or more of its subscribers under Rule 52.10 in the underlying cases.

The Exchange has subscribers in many counties in this state. Surely it was not the purpose of Rule 52.10 to permit suit by or against a reciprocal insurance exchange to be brought in any county simply because a member-subscriber resides there—especially when that subscriber has no connection with the suit, virtually no financial interest in the suit, and the type of suit, as in this case, can be maintained against the association as an entity and here it is directed against the association as an entity. Rule 52.10 was and is for the purpose of providing a procedure available to a plaintiff suing an unincorporated association to subject the assets of the association to judgment without suing and serving all members of the unincorporated association, but at the same time insuring that the interests of the

association and members thereof will be adequately protected in the suit by requiring those members named in the suit to be persons who will do just that. All of this is accomplished when the association is recognized as a jural person and suable as an entity, as is the case of an insurance exchange under § 379.680. Consequently, where, as in this case, the unincorporated association is a jural person capable of being sued as such, there is no purpose served by naming and joining individual subscribers as representatives of the class of members comprising the unincorporated association, other than to attempt to establish venue in a certain forum.

■ A large portion of the briefs in this case is devoted to the issue of venue. It is clear from the pleadings that no judgment is sought against Federspeil or Todd and that they were sued and served solely under Rule 52.10 in an effort to place venue in the Circuit Court of the City of St. Louis. Rule 52.10, of course, is not a venue rule. The rule applies in the instances where individuals essentially will be the named defendants but representatives of the class. In cases that proceed in that fashion, *i.e.*, when individuals are defendants although representatives of the class, the venue of the action is essentially controlled by the venue statutes pertaining to suits against persons. Service, therefore, would be accomplished in that type of action by serving the named individuals and in that fashion the venue is controlled by § 508.010, RSMo 1978. Rule 52.10 does not give or take away venue.

■ Nor is § 379.680, which allows the exchange to be sued as an entity, a venue statute; it is a statute providing for a method of service. Section 379.680 does, however, treat an insurance exchange or reciprocal as an entity for purposes of suit, much like a corporation. An insurance exchange or reciprocal issues policies to numerous subscribers and does business through its agents much the same as does a corporation. Where the general assembly

has, by statute, treated an unincorporated association as a suable entity and provided it with powers, benefits, and restrictions such as are possessed by corporations, §§ 379.650–.800, this Court is directed by Mo.Const. art. XI, § 1 to treat the unincorporated association as such. *See Forest City Mfg. Co. v. International Ladies' Garment Workers' Union Local 104*, 233 Mo. App. 935, 111 S.W.2d 934 (1938) (by implication). This does not mean that in other contexts a reciprocal must or should be treated as a corporation. Yet, because § 379.680 treats a reciprocal or interinsurance exchange as an entity, the appropriate venue statute to apply in suits against an exchange or reciprocal doing business pursuant to §§ 379.650–.800, is the venue statute applicable to corporations, § 508.-040, RSMo 1978, and this Court so holds.

The service of process on Christine L. Federspeil and Elizabeth Todd did not suffice to bring the Automobile Club Inter-Insurance Exchange into court in the Circuit Court of the City of St. Louis and the trial court erred in overruling the motions of Federspeil and Todd for dismissal as to them. On remand, the motion of those two underlying defendants should be sustained and the writ of prohibition is made permanent as to proceedings against Federspeil and Todd.

■ Service of process as to the Exchange is valid if accomplished pursuant to § 379.680 or Rule 54.13(a)(3).[5] The circuit court on remand can decide that issue, if it be an issue.

Whether the Exchange satisfies the requirements of § 508.040 so as to be subject to suit in the Circuit Court of the City of St. Louis remains undecided by the circuit court, and this Court will not pass on that issue here.

The preliminary rule in prohibition is hereby made absolute as to relators Federspeil and Todd, and in all other respects is quashed.

All concur.

---

5. Rule 54.13(a)(3), too, is not a venue rule. It simply provides a method of service and venue still is controlled by statute.