170 S.W.3d 437 (2005)
The EXECUTIVE BOARD OF the MISSOURI BAPTIST CONVENTION, et al., Appellants,
v.
Robin CARNAHAN, Secretary of State; The Baptist Home; Missouri Baptist College; Missouri Baptist Foundation; Windermere Baptist Conference Center; and Word and Way, Respondents.
No. WD 64069.
Missouri Court of Appeals, Western District.
May 31, 2005.
Motion for Rehearing and/or Transfer Denied August 2, 2005.
Application for Transfer Denied September 20, 2005.
*441 Michael Whitehead, James F. Freeman, III, and Glen S. Masters, Kansas City, MO, for Appellants.
Jim J. Shoemake, St. Louis, for Resp. Word & Way, Windermere and Mo. Bapt. Home, Clyde C. Farris, Jr. Clayton, for Resp. Mo. Bapt. College, Laurence R. Tucker, Kansas City, for Resp. Mo. Bapt. Foundation, Curtis F. Thompson, Jefferson City, for Resp. Robin Carnahan.
Before EDWIN H. SMITH, C.J., HAROLD L. LOWENSTEIN and ROBERT G. ULRICH, JJ.
Motion for Rehearing and/or Transfer to Supreme Court Denied August 2, 2005.
ROBERT G. ULRICH, Judge.
The Missouri Baptist Convention, the Executive Board of the Missouri Baptist Convention, and six churches affiliated with the Convention (Appellants) appeal the rulings of the Cole County Circuit Court dismissing an action against four non-profit agencies, the Missouri Baptist College, and the Secretary of State (Respondents) for changes in corporate charters of the agencies and the college that deprived the Convention of the ability to control them. Appellants sued Respondents for breach of contract and sought declaratory judgment and injunctive relief. The Convention raises five points on appeal, each alleging error in the pre-trial procedures of the trial court. The Convention argues that the trial court erred (1) in dismissing the claim with prejudice for lack of subject matter jurisdiction because the court still had jurisdiction to permit an amendment of the petition; (2) in dismissing the claim on the grounds that the six churches are not members of the Convention and lack standing under Rule 52.10; (3) in dismissing the claims of the Executive Board for a lack of standing; (4) in sustaining the Missouri Baptist College's First Motion for Partial Summary Judgment; and (5) in dismissing claims against the Secretary of State for failure to state a claim.

Parties
Although the exact composition of the Missouri Baptist Convention ("Convention") presents one of the major sources of contention in this appeal, the first amended petition alleges that the Convention is "an unincorporated association of affiliated Southern Baptist churches in the State of Missouri, and functions as the state denomination of Southern Baptist churches in Missouri." The first amended petition further states that the Convention was organized in 1834 and was formerly known as the Missouri Baptist General Association before changing its name in 1958. According to the petition, "[a]pproximately *442 1,950 Baptist churches in Missouri are affiliated members of the Convention, pursuant to the requirements for membership contained in the constitution of the Convention."
The action was brought as a class action pursuant to Rule 52.10 by six Baptist churches, each alleged to be "a member in good standing of the Missouri Baptist Convention." The six named churches are First Baptist Church of Arnold, Missouri; First Baptist Church of Branson, Missouri; Concord Baptist Church of Jefferson City, Inc.; Oakwood Baptist Church of Kansas City, Missouri; and Springhill Baptist Church of Springfield, Missouri.[1]
The Executive Board of the Missouri Baptist Convention ("Executive Board" or "Board") is a Missouri nonprofit corporation that purports to act on behalf of the Convention in the periods between its annual meetings. The petition alleges that the Convention designated the Executive Board its agent and representative both generally and specifically for this action.[2] The petition further alleges that the Executive Board had "the full legal powers, rights, and duties of the Convention" and "the right and capacity to bring this action in its corporate name for itself and as the agent, [of] the Convention"; and that for the purposes of this action, "all legal rights relations and duties of the Convention" are "co-extensive and co equal with the legal rights, relations and duties of the Executive Board."
The respondents are The Baptist Home ("Home"), Missouri Baptist College ("College"), Missouri Baptist Foundation ("Foundation"), Windermere Baptist Conference Center ("Windermere"), and Word and Way. Each is a Missouri non-profit corporation, and each once had provisions in its articles of incorporation stating that the corporation's trustees were to be elected or appointed by the Convention.[3] In 2000 and 2001, each of the defendant corporations' boards voted to amend its respective corporation's articles to provide for self-perpetuating boards, and each filed amended articles of incorporation with the Missouri Secretary of State. The Secretary of State is named a party because that office is the legal repository of articles of incorporation and the Secretary accepted for filing the defendant corporations' amended articles.

Procedural History
The Convention brought an action seeking declaratory and injunctive relief and damages for breach of contract. Plaintiffs *443 filed their First Amended Petition on September 19, 2002, alleging that the amended articles of incorporation adopted by each of the defendant corporations is null and void ab initio because the amendments were not approved by the Missouri Baptist Convention. The first amended petition also included as a defendant former Missouri Secretary of State Matt Blunt in his official capacity.
As an unincorporated entity, the Convention sought to certify a class of members as provided by Rule 52.10. Plaintiffs First Amended Petition alleges that the Churches brought the action for and on behalf of the members of the Convention, "seeking redress for damages and injury suffered by the Convention and jointly by the members of the Convention," and that the plaintiff churches would fairly and adequately protect the interests of the Convention and its members. Early within the litigation, the question was raised whether the plaintiff Churches were proper parties to bring the action as "members" of the Convention, and whether the Executive Board was a proper party to bring an action on behalf of the Convention.
The Executive Board also alleges independent status as a plaintiff in the action, claiming in the first amended petition that it "has the right and capacity to bring this action in its corporate name for itself and as the agent, the Convention [sic]." The claims against the Foundation, the College, and the Home allege independent rights and privileges of the Executive Board as a corporate entity. The claims against Windermere and Word & Way, however, were brought solely by the plaintiff Churches and were not brought by the Executive Board as a plaintiff in its own right.
The Home, Windermere, and Word & Way denied in their Answers that Churches are members of the Convention and also denied that the Executive Board had the legal ability to bring the action on behalf of the Convention. On October 17, 2003, the Home, Windermere, and Word & Way filed a joint motion to dismiss plaintiffs' amended petition for lack of standing and subject matter jurisdiction. Rules 55.27(a)(1); 55.27(g)(3); 55.28. The Foundation joined in that motion and filed a separate motion for summary judgment asserting lack of standing. The College filed a similar motion to dismiss on October 29, 2003.
In July 2003, the College filed a motion for summary judgment alleging that it was a corporation without any corporate members. The trial court entered its summary judgment on November 13, 2003, ruling that when the college amended its charter in 2001, "the College was a Missouri not-for profit corporation without members, and that the Missouri Baptist Convention was not a member of Missouri Baptist College."
The College also filed a second motion for summary judgment and memorandum in support of that motion on October 20, 2003, stating that it was entitled to judgment as a matter of law on Counts IV, V, and VI, directed to it, because: (1) none of the seven plaintiffs were members of the Convention, and thus lack standing under Rule 52.10 to bring the action; and (2) the Executive Board did not have standing to assert any rights or interests of its own with respect to the claims made in the First Amended Petition because it did not have a legally cognizable interest under the College's 1997 articles, which stated that the Executive Board could merely make a "recommendation" to the Convention regarding charter amendments.
Plaintiffs filed their responses to the defendant corporations' motion to dismiss and to the College's Second Motion for Summary Judgment on January 23, 2004, *444 along with a Consolidated Memorandum Statement of Facts and Consolidated Memorandum of Law addressing not only the College's motion for summary judgment, but also the motions to dismiss filed by the defendant corporations. The College filed its reply to plaintiffs' Consolidated Statement of Facts and Consolidated Memorandum of Law on February 10, 2004.
The trial court took up the issue of the motion to dismiss on February 26, 2004. Believing that it could not decide the standing issue on the motions to dismiss because such a determination would entail reference to documents outside of the amended petition, the court heard argument on the College's Second Motion for Summary Judgment, which raised the same standing issue. The court took the matter under advisement.
The day after the hearing, The Baptist Home, Windermere, and Word & Way filed separate motions for summary judgment joining in and incorporating by reference the College's Second Motion for Summary Judgment and the corresponding Response and Reply.
Plaintiffs filed a motion for leave to file a second amended petition naming certain individual messengers (pastors of the plaintiff churches) as representatives of the Convention a week later. Plaintiffs filed a copy of a proposed second amended petition along with their motion. The proposed second amended petition named the plaintiff churches, along with the individual pastors of the churches, and the Executive Board as plaintiffs and named then-Secretary of State Matt Blunt as a defendant, even though the court had dismissed the Secretary of State as a defendant on February 3, 2003.
Plaintiffs filed a Motion for Reconsideration of Judgment of Dismissal, for Clarification of Order, and for Leave to File Second Amended Petition on March 25, 2004. The court heard argument on that motion on April 5, 2004, and on April 7, 2004, entered its order denying plaintiffs' motion. In so doing, the court reiterated that it did not have jurisdiction to grant plaintiffs leave to file a second amended petition. Plaintiffs filed their notice of Appeal on April 16, 2004.
When entering its Judgment of Dismissal on March 11, 2004, the court concluded that neither the Churches nor the Executive Board was a member of the Convention and that only individuals known as "messengers" were allowed to bring a class action pursuant to Rule 52.10. The court further ruled that neither the Churches nor the Executive Board possessed standing to pursue the case on behalf of the Convention, and the Convention did not have standing to prosecute the case on its own behalf. The court then ruled the Executive Board lacked standing because it had no legally protectable interest in the litigation. The court found that none of the plaintiffs had standing to bring the suit, which deprived it of subject matter jurisdiction over the claim.

I. Standing
The Convention's first three points on appeal all allege error within the trial court's Judgment of Dismissal. The first point alleges that the trial court erred in dismissing the claims for lack of subject matter jurisdiction because even if the member churches lacked standing, the Convention itself has standing. Consequently, it is argued, the trial court retained jurisdiction to allow the second amended petition, which would have cured the perceived standing issue. The second point alleges that the trial court improperly ruled that the Churches lack standing because it misread and misapplied the Convention Constitution and Bylaws. The *445 third point alleges that the trial court improperly dismissed the Executive Board from the action for a lack of standing.
Each of these points relates to the issue of standing. The trial court's judgment illustrates a central concern with who is the proper party to bring an action on behalf of the Convention. While the complexity of the underlying motions creates a rather precarious procedural posture, appellate review of whether a party has standing to sue is conducted de novo. Inman v. Mo. Dep't of Corr., 139 S.W.3d 180, 184 (Mo.App. W.D.2004). The question of standing is determined as a matter of law, based upon the petition "along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued." Id. (quoting Kinder v. Holden, 92 S.W.3d 793, 803 (Mo. App. W.D.2002)). The question of standing is a threshold issue. Cont'l Coal, Inc. v. Mo. Land Reclamation Comm'n, 150 S.W.3d 371, 378 (Mo.App. W.D.2004). "A party cannot obtain relief from a court if that party lacks standing." Id.
Consequently, the standing issues must be determined before any further allegations of error within the pre-trial proceedings are considered.

A. Applicability of Rule 52.10
The trial court struggled with the underlying question of who is the proper party to bring the asserted claims. The case presents a unique controversy in that the respondent agencies have each alleged that the Churches are not members of the Convention and are thus unable to utilize class action Rule 52.10. While who has standing to bring the action has proven confusing, Rule 52.10 indicates that someone has the ability to bring an action on behalf of the Missouri Baptist Convention.
The Convention is an unincorporated religious association and, as such, is not a legally cognizable entity. Farm & Home Sav. & Loan Ass'n of Mo. v. Armstrong, 337 Mo. 349, 85 S.W.2d 461, 466 (1935). Unincorporated associations have no entity status beyond the status of those persons who comprise the association. State ex. rel. Auto. Club Inter-Ins. Exch. v. Gaertner, 636 S.W.2d 68, 70 (Mo. banc 1982). As a consequence, an unincorporated association ordinarily lacks the legal capacity to sue or be sued in the name of the association. Forest City Mfg. Co. v. Int'l Ladies' Garment Workers' Union, Local No. 104, 233 Mo.App. 935, 111 S.W.2d 934, 936 (1938).
Supreme Court Rule 52.10 permits an action "by or against the members of an unincorporated association as a class," provided that the representative parties "fairly and adequately protect the interests of the association and its members." The rule provides class status for the members of an unincorporated association "to give `entity treatment' to the association when for formal reasons it cannot sue or be sued as a jural person...." State ex inf. Ashcroft v. Kansas City Firefighters Local No. 42, 672 S.W.2d 99, 118 (Mo.App. W.D.1984)(quoting 7A Wright & Miller, Federal Practice and Procedure § 1861 at 457 (1972)). The rule is an expression of the equitable doctrine of virtual representation. Id. The intent is to provide a means of litigating claims of common interest to many parties, where bringing all the parties before the court is impractical. Robinson v. Nick, 235 Mo. App. 461, 136 S.W.2d 374, 385 (1940).
An "association" is "a body of persons acting together, without a charter, but upon the methods and forms used by incorporated bodies, for the prosecution of some common enterprise." Clark v. Grand Lodge of Bhd. of R.R. Trainmen, *446 328 Mo. 1084, 43 S.W.2d 404, 408 (1931). An association ordinarily operates in a manner quite similar to a corporation. "[A] corporation is merely an incorporated association, that is, an association which, by complying with certain conditions prescribed by law, is clothed with corporate authority." Id. at 408-09. "The business carried on by the corporation and the form of the organization may be little, if any, changed by the fact of incorporation from that of the association." Id. at 409.
Without the formalities of incorporation, however, "[v]oluntary unincorporated associations exist under the common law right of contract and have no existence apart from the contract of association." State ex. rel. Auto. Club Inter-Ins. Exch., 636 S.W.2d at 70 (quoting Morris v. Willis, 338 S.W.2d 777, 779 (Mo.1960)). Such associations are "`purely a creature of convention.'" Forest City Mfg. Co., 111 S.W.2d at 936-37 (quoting Newton County Farmers' & Fruit-Growers' Exch. v. Kansas City S. Ry. Co., 326 Mo. 617, 31 S.W.2d 803, 804 (1930)). Consequently, the internal contractual relationship between the members and the organization provides the sole framework for understanding the dynamic of the group.
The trial court correctly analyzed the question of membership in accordance with the constitution and bylaws of the Convention. The constitution of an unincorporated entity provides a means of understanding the internal relationships of the organization. See Willoughby. v. Hildreth, 182 Mo.App. 80, 167 S.W. 639, 640 (1914). More importantly, however, the constitution, rules, and bylaws of an association establish an enforceable contract between the members. See Junkins v. Local Union No. 6313, Communication Workers of Am., 241 Mo.App. 1029, 271 S.W.2d 71, 76 (1954); Robinson v. Nick, 235 Mo.App. 461, 136 S.W.2d 374, 387 (1940). An association determines its own rules of conduct through its constitution and its bylaws and must abide by them to procure judicial redress. See Lake Arrowhead Prop. Owners Ass'n v. Bagwell, 100 S.W.3d 840, 844 (Mo.App. W.D.2003).
The trial court concluded that the constitution and bylaws of the Convention unambiguously provide that individuals known as "messengers" are the sole members of the Convention. The court made findings of fact that the only people who vote at an annual meeting of the Convention are the messengers and neither Churches nor the Executive Board vote. The court further found that messengers vote their conscience and cast their individual votes as they deem appropriate. Each of these rulings was theoretically based upon a reading of the constitution and bylaws as the court ruled that extrinsic evidence proffered by the Convention was not admissible.

B. Membership of Churches
Because the propriety of the trial court's decision of who is a proper member of the Convention influences the remainder of the standing analysis, this decision is addressed first. The Convention notes that courts ordinarily abstain from construing membership in a religious organization.[4]See Henson v. Payne, 302 S.W.2d 44, 51 (Mo.App.1956).
The Convention's second point on appeal alleges two distinct theories of error stemming *447 from the trial court's decision to analyze membership solely from the Convention's constitution and bylaws despite evidence proffered to prove the membership of Churches. The first alleges that the trial court erred by failing to make an express finding that the constitution and bylaws constitute an integrated contract and that the governing documents of the Conventionwhen read in their entiretyunambiguously demonstrate that churches are members of the Convention. The alternative theory is that proffered evidence demonstrates a latent ambiguity in the constitution and bylaws and that extrinsic evidence demonstrates the intent that affiliated churches are convention members.
The essence of both of the Convention's contentions is that the governing documents fail to properly articulate the ongoing practice of the Convention to construe affiliated Missouri Baptist churches as "members" of the Convention. The plaintiffs took similar alternative positions before the trial court, arguing that regardless whether the constitutional provisions are unambiguous, the clear intention of the Convention is to make churches members of the convention. Plaintiff's Consolidated Memorandum of Law, submitted to the trial court January 23, 2004, argued, "[w]hether ambiguous or unambiguous, before the Court can reasonably interpret the meaning of the Constitution's Membership provisions, it must consider the realities of Convention life." The Convention offered significant evidentiary support for the proposition, which included numerous examples of the Convention itself interpreting its governing documents to mean that churches were members of the Convention. The Convention argues that the trial court should have looked to the proffered extrinsic evidence to discern this intent.
The question of whether a contract is ambiguous and the interpretation of the contract itself are issues of law that are reviewed de novo on appeal. See Sonoma Mgmt. Co., Inc., v. Boessen, 70 S.W.3d 475, 479 (Mo.App. W.D.2002). The constitution and bylaws of an association, much like corporate articles and bylaws, are construed according to the general rules of contracts, and extrinsic evidence is not admissible to vary, add, or contradict the terms of an unambiguous and complete written document. See Ironite Products, Co., Inc., v. Samuels, 985 S.W.2d 858, 861-62 (Mo.App. E.D.1998).
The Convention first argues that the trial court committed reversible error by excluding parole evidence without a specific finding that the constitution and bylaws constituted a complete and integrated contract.[5] This argument fails to consider the contractual nature of an association's constitution. As discussed supra, the constitution, rules, and bylaws of an association define the contract between members. By joining the association, members agree to be bound by the terms of these governing documents. To both members and outsiders, these documents represent the expression of the contract that binds the group.
*448 A contract is integrated where it constitutes a complete statement of the bargain made between parties. Centerre Bank of Kansas City, N.A. v. Distribs., Inc. 705 S.W.2d 42, 51 (Mo.App. W.D.1985)(citing 4 Williston, Contracts, § 636 (3rd ed.1961)). If a written document appears on its face to be a complete agreement, it is conclusively presumed to be a final and complete agreement between the parties. Poelker v. Jamison, 4 S.W.3d 611, 613 (Mo.App. E.D.1999). The constitution and bylaws express the complete contractual relationship of the Convention, and the trial court committed no error in reviewing them as such.
Having concluded that the constitution and bylaws represent the integrated agreement of the Convention, the question remains whether the trial court erred in excluding the proffered extrinsic evidence. "The parole evidence rule bars extrinsic evidence, unless an integrated contract is ambiguous." Royal Banks of Mo. v. Fridkin, 819 S.W.2d 359, 361 (Mo. banc 1991).
The Constitution of the Missouri Baptist Convention delineates the purpose, organizational structure, duties, and leadership of the Convention. As stated within the constitution, individuals known as messengers meet annually during October or November. Through this annual meeting, messengers elect officers to serve throughout the year on the Executive Board, elect non-officer members from their assembly to the Executive Board, vote on resolutions, and vote on the membership of governing boards and charter changes to "educational, benevolent, or other agencies approved by the Convention." While messengers are sent from "affiliated churches," Article V, Section 1 of the constitution outlines that "[t]he relation between the Convention and the churches and associations shall be fraternal and cooperative." Affiliated Baptist churches operate with complete autonomy and independence, and "[t]he Convention shall never exercise any authority over the churches."
The Convention maintains that it is, first and foremost, an organization of Baptist churches. On appeal, the Convention describes the messenger and church relationship as comparable to that of representative governmentmessengers are sent as delegates or agents of their respective churches. Though the proffered extrinsic evidence includes numerous examples that seem to reflect this practice, particularly deposition testimony, this evidence has no bearing upon interpretations of the contract unless an ambiguity is found within the governing documents. "Where the language of a contract is unambiguous, the intent of the parties is to be gathered from the contract alone, and a court will not resort to construction where the intent of the parties is expressed in clear unambiguous language." Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428-29 (Mo. banc 2003). "A contract is ambiguous only if its terms are susceptible to fair and honest differences." Id. at 428.
The Convention argues that a patent ambiguity exists within the constitution and bylaws because the documents never state that "messengers are members" or that "churches are not members." Article IV of the constitution, which reads as follows, defines membership in the Convention:
This Convention shall consist of messengers named by affiliated churches under the following conditions:
Section 1. Any Baptist church in sympathy with the objects of the Convention and desiring to cooperate with the Convention in her program of single alignment with the Southern Baptist *449 Convention and any Baptist church meeting the qualifications stated in Section 2 shall be entitled to one messenger for every one hundred members or fractions thereof, provided that no church shall be entitled to have more than fifteen messengers.
Section 2. In accordance with the agreement in the year 1919, Missouri Baptists shall continue in fellowship with the multiple aligned churches who were affiliated with the Missouri Baptist Convention of 1961.
Section 3. Should the seating of any messenger or messengers from any church applying for membership in the Convention be challenged, the matter shall be referred to a credentials committee appointed by the Convention president. The committee shall report to the Convention at the next session after appointment and the Convention shall make the final decision about the challenged messenger or messengers.
As described more fully in Article II, section 1 of the bylaws, "[a]ll duly enrolled messengers shall constitute the convention."
On its face, the constitution clearly reflects that the Convention is an ongoing entity that meets annually.[6] Messengers, though selected by "affiliated" churches, are the component members of the organization. While the contract doesn't speak directly to the issue of who "members" are for the purposes of a class action based upon Rule 52.10, it sufficiently defines the character of the organization to allow an interpretation of this issue. Rule 52.10 is designed to give class status to an aggregate of persons, already bound by a jural relationship. State ex inf. Ashcroft, 672 S.W.2d at 123. The aggregate of the Convention is not individual churches, defined by the constitution as wholly autonomous, but is the messengers in attendance at the annual meetings.[7]
Finally, and in the alternative, the Convention argues that numerous latent ambiguities exist within the constitution. A latent ambiguity arises when writings that appear clear and unambiguous are made uncertain by collateral matters. Royal Banks of Mo., 819 S.W.2d at 362. The Convention argues that the proffered extrinsic evidence illustrates ambiguities within the documents, such as the fact that the word "convention" means both the organization and the annual meeting in denominational parlance. This does not render *450 the document ambiguous, however, as both of these meanings are clearly and harmoniously expressed in the governing documents. The more forceful argument made by the Convention is that there exists a clear "custom and practice" of interpreting the Convention as an association of churches, not merely of messengers.
As Royal Banks makes clear, Missouri does recognize instances in which the contractual intent of a party may not always be ascertained by the final written contract. However, "[p]arole evidence may not be used to create ambiguity in an otherwise unambiguous contract or to show that an obligation is other than that expressed in the written instrument." Poelker, 4 S.W.3d at 613. As defined by the Convention's constitution, the embodiment of the contract defining the association, messengers are the members of the Convention. While messengers are drawn from affiliated churches, the churches themselves are distinct and separate. Convention officers are drawn from attending messengers. Only messengers can enact constitutional amendments and bylaws changes. Messengers vote on resolutions proposed by the Convention. Committees are elected from messengers. While messengers have ties to churches, the Convention itself operates purely through the association of the messengers in attendance at the annual meeting.[8]
The trial court correctly concluded that messengers are the proper "members" of the Convention for purposes of Rule 52.10. The Convention's constitution and bylaws illustrate an integrated contract between the members of the convention and those documents unambiguously illustrate that messengers are the members of the Convention.

C. Executive Board As Member of Convention
The Convention's third point on appeal alleges trial court error in the dismissal of the Executive Board for lack of standing. In addition to finding that the Executive Board is not a member of the Convention for the purpose of applying Rule 52.10, the trial court found that the Executive Board lacks standing in that it has no legally protectable interest in the litigation.
The Convention's First Amended Petition posits that the Executive Board is the agent and "representative" of the Convention, possessing the legal status to prosecute the action on behalf of the Convention. The Convention's constitution defines the Executive Board, stating, "[t]he corporate powers of the Convention shall be reposed in the Executive Board of the Convention ... This Board shall have charge of the missionary, educational, and benevolent work of the Convention." Article VII, section 4 notes that "Convention officers shall serve as ex officio members of the Executive Board with all rights of members." Article VIII section 2 notes "the Executive Board shall be composed of Convention officers as at large members and three members from each of eight areas of the state." The initial question, however, is not whether the Executive Board has standing as an agent of the Convention, but whether the *451 composite members of the Executive Board are "members" of the Convention within the meaning of Rule 52.10 to survive the dictates of the rule.
While the Executive Board is an independent entity due to its corporate nature, it is also linked to the Convention for Rule 52.10 consideration by its membership. As this court observed in State ex. inf. Ashcroft:
A class action under voluntary unincorporated associates Rule 52.10 presupposes, as we note, subsistent jural relations among the membership, with shared interests and government and all but in legal capacity, a virtual corporate unit. The purpose of Rule 52.10 is to overcome this incapacity and to endow the association with entity status for suit. In the usual course, therefore, an officer of the association shares the interests of the membership, and hence serves as an adequate representative of that class.
672 S.W.2d at 121 n. 11 (internal citations omitted). The Executive Board consists of elected officials and other messengers drawn from the Convention membership. The cohesion of interests and the authority delegated by the Convention to the officers of the unincorporated association "virtually assurein the absence of other circumstancesthat the officers named as representatives of [the association] in a Rule 52.10 procedure will adequately protect the stakes of the absent members." Id. Not only are the officers of the Convention membership granted Executive Board position, three messengers from each of the eight regions comprising the geographic entity of Missouri are also selected by the Convention to represent it.
"[T]he Rules of Civil Procedure are to be liberally construed to promote justice and to minimize the number of cases disposed of on procedural questions.. . ." Commerce Bank of Kansas City, N.A. v. Conrad, 560 S.W.2d 388, 391 (Mo.App.1977). The Executive Board's independent corporate status neither divests it of the authority granted by the Convention's constitution and bylaws nor does it divest it of its membership link to the unincorporated association. The Executive Board constitutes identifiable members of the Convention elected by the membership. Consequently, the Executive Board of the Convention, by virtue of its members, provides a sufficient link to the members of the convention to give standing to the Convention.
Consequently, the trial court erred in dismissing the action of the Convention with prejudice. By naming the Executive Board in a representative capacity, the petition asserted sufficient identifiable members of the Convention for the trial court to make the determination of adequacy required by Rule 52.10. If the Board members were somehow deemed improper or inadequate representatives, a question this court does not address, the proper remedy would be to allow an amendment to the pleadings.
The Convention's first point on appeal attempts to argue that because Rule 52.10 is a rule of capacity rather than a rule of standing, the Convention possessed sufficient standing in its own right to allow the trial court to permit amendment. See Lilly v. Tobbein, 103 Mo. 477, 15 S.W. 618 (1891). The virtues of this argument need not be considered.

D. Executive Board as Corporation
Concluding that the Executive Board provides sufficient standing to file the action on behalf of the Convention does not reach the merits of the Convention's third point on appeal. Although the First Amended Petition asserts the Executive *452 Board has standing as an agent of the Convention, it also alleges injuries suffered by the corporation in its independent corporate capacity.
As previously stated, the trial court's judgment dismissed the Executive Board from the action after finding that the Board "does not have a legally cognizable or protectable interest in this litigation." On March 24, 2004, the Convention filed Plaintiff's Motion for Reconsideration of Judgment of Dismissal, for Clarification of Order and for Leave to File Second Amended Petition. In the trial court's April 7, 2004, order denying the motion, the court reiterated, "[t]his Court has reviewed the allegations asserted by the Executive Board in the amended petition and has reviewed defendant's corporate charters, and finds that the Executive Board of the Missouri Baptist Convention does not have standing to assert claims of the Missouri Baptist Convention and does not have a legally protectable interest in this litigation."
The Executive Board contends that the Convention has placed "broad corporate powers" in the Board, allowing it to assert rights of the Convention based upon the governing documents. Article VII, section 3(b) states "The Board shall have full power and authority to act for the Convention between annual meetings of the Convention in any and all matters pertaining to the Convention's business." While the convention documents articulate the Executive Board's ability to act on behalf of the Convention, they give no authority to the Board to pursue the action in its individual corporate status.
The petition claims that the Executive Board is two distinct entities. First, it is an agent of the Convention. Though perpetual in its existence, the Convention relies upon the Executive Board to oversee and implement the decisions of the Convention. Secondly, it is an independent corporation. Thus, the claim is that the Executive Board acts in its own capacity as a Missouri corporation and also as the day-to-day incarnation of the Convention itself. The Board's status is impacted by whether the Executive Board as a corporation has an identifiable injury or whether the Executive Board's involvement in the case is limited to injuries suffered by the Convention.
Each of the agency's charters, with the exception of Word and Way, grants some right or privilege to the Executive Board, and each of the rights and benefits established by the individual agency charters is a right or benefit belonging to the Convention. The Executive Board's ability to act in each instance is an allocation of authority to the Board as an agent of the Convention. The Convention's constitution and bylaws define the Executive Board as the agent of the Convention with granted authority to act in behalf of the Convention. Even thought the Convention's governing documents authorize the Executive Board to incorporate, representation of the Convention by the Executive Board for Rule 52.10 applicability is linked to the mutual membership of both the Convention and the Board and to the authority granted by the Convention's constitution and bylaws. The Executive Board as an incorporated entity separate and independent of the Convention suffered no injury. Representation by the Board is of the Convention as an unincorporated association. Standing is limited to the Convention itself, and the trial court properly dismissed the Board in its independent capacity.

II. Remaining Points
The two remaining points challenge judgments of the trial court. The Convention's fourth point on appeal alleges that the trial court incorrectly granted *453 partial summary judgment to the Missouri Baptist College in its November 13, 2003, judgment finding that the College's pre-amendment charter did not include "members." The Convention's fifth point on appeal alleges that the trial court incorrectly dismissed the Secretary of State in its February 3, 2003, order.
Having concluded that the Convention does have standing to continue the litigation and that the trial court improperly dismissed the action for lack of standing, neither of these decisions constitutes a final judgment. In the absence of a final judgment, an appellate court has no jurisdiction over the matter. Avidan v. Transit Cas. Co., 20 S.W.3d 521, 523 (Mo. banc 2000). "If an intended judgment does not dispose of all issues and all parties in the case or does not form a final disposition of the matter, it is not a final, appealable judgment and [this court lacks] jurisdiction to entertain an attempted appeal therefrom." Id. (quoting Wallace v. Hankins, 541 S.W.2d 82, 84 (Mo.App. 1976)). The exception is where the trial court expressly designates "there is no just reason for delay." Rule 74.01(b); Gateway Directory Pub. Group, Inc. v. Fischer, 84 S.W.3d 496, 497 (Mo.App. E.D. 2002). The trial court did not employ Rule 74.01(b) in this case. Each of these decisions remains an interlocutory ruling and remains within the jurisdiction of the circuit court. This court is unable to reach the merits of the Convention's remaining arguments.

Conclusion
The trial court erred in dismissing the claims of the Convention for lack of standing. The Executive Board, comprising the messenger officers of the Convention and other messenger members of the Convention (three messengers selected from each of the eight districts comprising the geographic area of Missouri), was sufficient for the trial court to determine whether the Board was a proper party under Rule 52.10 to represent the members of the Missouri Baptist Convention. The trial court correctly dismissed the Executive Board in its individual and independent corporate status. Consequently, the judgment of dismissal regarding the claims of the Convention is reversed, and the case is remanded for further proceedings.
SMITH, C.J. and LOWENSTEIN, J. concur.
NOTES
[1] For purposes of clarity, the six churches collectively will be referred to as "Churches" throughout the remainder of this opinion.
[2] The petition indicates that on or about November 1, 2001, the Convention specifically authorized the Executive Board to bring this action on its behalf.
[3] This information has been adapted from Windermere's statement of facts for context only: the Home's articles stated that the corporation's trustees were to be nominated and elected by the Convention at its annual meeting. Windermere's articles stated that the executive director and president of the Convention and the chairman of the Windermere Board of Advisors were to be permanent members of the board by virtue of their office, and that the corporation's remaining six trustees were to be presented by the Convention Nominating Committee for election by the Convention. Word & Way's articles stated that the corporation's twelve trustees were to be nominated by the Convention Nominating Committee and elected at the Convention's annual meeting. The College's articles stated that the corporation's board of trustees would consist of twenty-seven persons appointed by the Convention. The Foundation's articles stated that the Foundation's trustees were to be nominated and elected in accordance with the procedures and practices of the Nominating Committee of the Convention.
[4] Civil courts have no ecclesiastical jurisdiction, but will exercise jurisdiction to protect civil or property rights, even though a controversy emanates from an ecclesiastical issue. Reorganized Church of Jesus Christ of Latter Day Saints v. Thomas, 758 S.W.2d 726, 731 (Mo.App. W.D.1988). Whether the case presented is ecclesiastical in nature need not be determined because the ultimate issues involve civil or property rights.
[5] In support of this contention, the Convention cites this court's opinion in Wulfing v. Kansas City Southern Industries, Inc., 842 S.W.2d 133 (Mo.App. W.D.1992), which suggests that extrinsic evidence must always be heard to determine whether a contract is integrated. However, discrepancies in Missouri cases regarding the proper means of determining whether a contract is integrated are noted. This court is persuaded by the Eastern District's interpretation of Missouri law that calls for a presumption of integration when a document appears integrated on its face. See e.g. State ex rel. Mo. Highway & Transp. Comm'n v. Maryville Land P'ship, 62 S.W.3d 485, 490 (Mo.App. E.D.2001). To the extent that Wulfing contradicts the principles of this opinion, it is effectively overruled.
[6] An ongoing dispute among the parties to this issue is the Missouri Supreme Court's interpretation of the organization in Farm & Home Savings & Loan Ass'n of Missouri, 337 Mo. 349, 85 S.W.2d 461 (1935). In interpreting the earlier embodiment of the association, the Missouri Baptist General Association, the Court ruled that the organization was "phoenixlike" and could act "during only the period of a particular annual session." Id. at 466. This court's review of the governing documents reads the constitution in its present form to indicate a perpetual organization and does not find this earlier characterization a compelling analysis of the modern incarnation of the Convention.
[7] The Convention further argues that section 3 of Article IV contains a specific reference to churches as members when it states "[s]hould the seating of any messenger or messengers from any church applying for membership in the Convention be challenged." (Emphasis added). The Convention contends that reading the language to mean that messengers are the exclusive members of the Convention would render the phrase "from any church" meaningless surplusage. Sections 1 and 2 of the Article clarify the introductory language, however, stating, "This Convention shall consist of messengers." Because Sections 1 and 2 define two distinct types of "affiliated" churches, it would not be surplusage to assume the "from any church" language merely qualifies the description "any messenger or messengers ... applying for membership."
[8] Some of the findings of the trial court, such as the findings that messengers vote their conscience and are free to cast individual votes as they see appropriate, are not readily ascertainable from the governing documents. As the Convention points out, these findings are inappropriately drawn from extrinsic evidence even though the trial court correctly ruled that the evidence was not admissible. While these findings of fact may buttress the trial court's decision, they are not necessary to reach the same conclusions from the governing documents.